Gilles MARCHAND

v.

EASTERN WELDING COMPANY and Commercial Union Insurance Company.

Pasquale NAPOLITANO

v.

BECHTEL CONSTRUCTION and American Fidelity Insurance Company.

Supreme Judicial Court of Maine.

Argued March 18, 1994.

Decided May 5, 1994.

---

Douglas S. Kaplan (orally), Bornstein & Hovermale, Portland, for Marchand.

James MacAdam (orally), McTeague, Higbee, Libner, MacAdam, Case & Watson, Topsham, for Napolitano.

Alison Bane (orally), Piampiano & Gavin, Elizabeth Connellan (orally), Robinson, Kriger, McCallum, & Greene, Portland, for employers.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS,* RUDMAN and DANA, JJ.

CLIFFORD, Justice.

This consolidated appeal requires us to decide whether totally incapacitated employees receiving workers' compensation benefits at the maximum rate are entitled to an annual adjustment of weekly compensation payments during the first three years following their injuries. Because we conclude that the three-year delay in the annual adjustment does not affect employees whose otherwise entitled-to benefits are limited by the maximum benefit level, those employees are enti-

tled to receive annual adjustments to the maximum benefit level without waiting until the expiration of the first three years following their injuries. Accordingly, we vacate the decision of the Workers' Compensation Board denying an annual adjustment to Gilles Marchand, and we affirm the decision of the Workers' Compensation Board awarding an annual adjustment to Pasquale Napolitano.

Under the provisions of the Workers' Compensation Act, employees incapacitated for work as a result of work-related injuries, are entitled to compensation, with totally incapacitated employees entitled to receive two-thirds of the employee's average weekly wages. 39 M.R.S.A. § 54–B (1989), *repealed by* P.L.1991, ch. 885, § A–7 (effective Jan. 1, 1993), *codified as* 39–A M.R.S.A. § 212.[1] There is, however, a maximum benefit level determined by 39 M.R.S.A. § 53–B (1989), *repealed by* P.L.1991, ch. 885, § A–7 (effective Jan. 1, 1993), *codified as* 39–A M.R.S.A. § 211. This maximum benefit level limits the benefits payable to an incapacitated, high wage earning employee to an amount less than two-thirds of that employee's average weekly wages. The law also generally provides for inflation and deflation adjustments to these benefits. In 1987, the law was amended to provide for a three-year delay from the date of injury before incapacitated employees are entitled to the inflation adjustments.

In the first of the consolidated cases, the employee, Gilles Marchand, suffered a compensable injury on November 19, 1990. Because two-thirds of his average weekly wage ($984.43) exceeded the maximum allowable benefit level, the parties agreed that Marchand was entitled to compensation at the maximum benefit level of ($493.28) per week, established pursuant to 39 M.R.S.A. § 53–B. On December 24, 1992, Marchand filed a

* Collins, J. sat at oral argument and participated in the initial conference, but retired before this opinion was adopted.

1. Former Title 39 M.R.S.A. has been repealed and replaced by Title 39–A M.R.S.A. *Maine Workers' Compensation Act of 1992*, P.L.1991, ch. 885, § A–7 (effective Jan. 1, 1993). Title 39–A, however, does not retroactively repeal section 53–B

and 54–A of former Title 39 for injuries that precede January 1, 1993. P.L.1991, ch. 885, § A–10 (effective Jan. 1, 1993). Because both of these consolidated cases involve dates of injury that precede the effective date of Title 39–A, this appeal is governed exclusively by former Title 39 and does not implicate the new Act.

petition to calculate compensation rate seeking an inflation adjustment effective on the first July 1st following the injury. The Workers' Compensation Board denied the petition, ruling that the employee is not entitled to any adjustment of his benefits until the expiration of three years after the date of his injury. 39 M.R.S.A. § 54–B (1989). Marchand appealed.

In the second of the consolidated cases, the employee, Pasquale Napolitano, received total incapacity benefits as a result of a May 7, 1991 injury. Because two-thirds of the employee's average weekly wage ($1666.60) exceeded the maximum allowable benefit level established pursuant to section 53–B, the employer, Bechtel Construction, paid compensation to Napolitano at the maximum benefit level ($493.28). The Workers' Compensation Board granted Napolitano's Petition to Determine Proper Workers' Compensation Rate and awarded an annual adjustment. Bechtel filed this appeal. We granted the petitions for appellate review in both cases. *See* 39–A M.R.S.A. § 322(3) (Supp. 1993).

The relevant provisions of 39 M.R.S.A. §§ 53–B and 54–B are as follows:

53–B Maximum Benefit Levels

The maximum weekly benefits payable under section 54–B, 55–B or 58–A is $447.92. Beginning on July 1st, 1989, this maximum benefit level *shall be adjusted annually* so that it continues to bear the same percentage relationship to the state average weekly wage, as determined by the Bureau of Employment Security on July 1, 1988.

(Emphasis added.)

54–B Compensation for Total Incapacity

While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compensation equal to ⅔ his average gross weekly wages, earnings or salary, but not more than the maximum benefits under section 53–B. . . .

1. **Annual adjustments.** *Beginning on the 3rd anniversary of the injury, weekly compensation under this section shall be adjusted annually.* The adjustment shall be equal to the lesser of the actual percentage increase or decrease in the state average weekly wages, as computed by the Bureau of Employment and Security, for the previous year or 5%.

*The annual adjustment shall be made on the 3rd and each succeeding anniversary date of the injury, except that where the effect of the maximum under section 53–B is to reduce the amount of compensation to which the claimant would otherwise be entitled, the adjustment shall be made annually on July 1st. . . .*

(Emphasis added.)

The employees first contend that section 53–B creates a separate adjustment that operates independently of the adjustment in section 54–B, requiring the weekly compensation of each individual employee receiving the maximum benefit level to be adjusted annually, thus entitling Marchand and Napolitano to annual adjustment without waiting the three years provided for in section 54–B. The plain language of section 53–B compels us to reject that contention. That section refers to the maximum weekly benefit *payable under* section 54–B (total incapacity), 55–B (partial incapacity) or 58–A (death benefits), leading to the conclusion that section 53–B does not provide a separate adjustment payable pursuant to that section, but rather determines the maximum benefits that are payable to employees pursuant to other sections of the Act. In addition, section 53–B refers to a maximum benefit *level*, and does not speak to an amount of compensation that may be paid to an individual employee.

Nevertheless, totally incapacitated employees are entitled to an annual inflation/deflation adjustment pursuant to section 54–B. The employers contend that all of the annual adjustments to compensation provided for in section 54–B(1) are subject to the third anniversary language in the first paragraph of section 54–B(1). They rely on the language of that section, and on the fact that the language delaying the annual adjustments for three years was enacted as part of a major reform of the Workers' Compensation Act in 1987, designed to scale back benefits paid to employees to prevent the system's insurers from withdrawing from the system.

The employees, on the other hand, contend that both the "except" language in section 54–B(1) and the legislative history compel a conclusion that incapacitated employees who would otherwise be entitled to higher compensation but for the maximum compensation rate set under section 53–B, are excepted from the three year waiting period.

Because the plain language of section 54–B can be fairly read to support the positions of both the employers and the employees, we look to the legislative history to aid us in determining legislative intent. *Lewiston Raceway v. Maine State Harness Racing Comm'n*, 593 A.2d 663, 665 (Me.1991); *State v. Edward C.*, 531 A.2d 672, 673 (Me.1987). To ameliorate the effect of inflation on incapacitated employees receiving compensation based on the average weekly wage at the time of their injury, the legislature added the inflation/deflation adjustment to former section 54 in 1971.[2] From 1971 to 1983, former section 54 provided that the annual inflation/deflation adjustment would occur on July 1st.[3] In an effort to reduce workers' compensation insurance premiums, section 54 was amended in 1983 to provide that totally incapacitated employees would not receive the annual adjustment until the anniversary date of their injury.[4] In recognition of the unfairness that the maximum benefit level works on the high wage earners, i.e., capping benefits and preventing those employees from reaching two-thirds of their average weekly wage, high wage earners were excepted from the amendment changing the anniversary date, and were allowed to continue to receive their annual adjustments on July 1.

Following the 1983 amendment, the pertinent part of section 54 read:

> The annual adjustments required by this section shall be made on the anniversary date of the injury, *except* where the injury occurred prior to July 1, 1983, or *where the effect of the 166⅔% maximum* [the maximum benefit level at the time of the 1983 amendment was 166⅔% of the state's average weekly wage] *is to reduce the amount of compensation to which a claimant would otherwise be entitled, the adjustment shall be made annually on July 1.*[5]

(Emphasis added.)

The stated purpose of the amendment was to:

> provide that annual cost-of-living adjustments be made on the anniversary date of the injury, rather than on the arbitrary July 1 date in current law. *An exception would be made in those cases where the effect of the ... benefit cap results in a reduction of the benefits which would otherwise be payable.*

L.D. 1322, Statement of Fact (111th Legis.1983). The *Report of the Speaker's Select Committee on Workers' Compensation* also makes clear that the purpose of the "exception" is to protect the high earner employees who, because of the maximum benefit cap, are precluded from receiving two-thirds of their average weekly wage and to allow their benefits to reach the maximum level as soon

---

2. *An Act Refining the Compensation Under Workmen's Compensation Law for Total Incapacity, Partial Incapacity and Death*, P.L.1971, ch. 225, § 1 (effective Jan. 1, 1972), *codified as* 39 M.R.S.A. § 54. The purpose of the inflation/deflation provision was to protect
   injured workers against shrinkage in the value of the dollar caused by inflation, while simultaneously guaranteeing that during deflationary economic conditions, the entire system would not suffer from an inability to make appropriate adjustments in compensation payments.
   *Bernard v. Cives Corp.*, 395 A.2d 1141, 1148 (Me. 1987); *see also Campbell v. Bates Fabrics, Inc.*, 422 A.2d 1014, 1016 (Me.1980); *Legasse v. Hannaford Bros. Co.*, 497 A.2d 1112, 1116–18 (Me. 1985); *Rugan v. Dole Co.*, 429 A.2d 535, 537 (Me.1981).

3. 39 M.R.S.A. § 54 (Supp.1973), *amended by* P.L. 1973, ch. 557, § 2 (effective Nov. 29, 1974); *see also* 39 M.R.S.A. § 54 (Supp.1973), *amended by* P.L.1975, ch. 493, § 1 (effective Oct. 1, 1975); 39 M.R.S.A. § 54 (1975), *amended by* P.L.1981, ch. 483, § 1 (effective June 22, 1981).

4. According to the Statement of Fact accompanying L.D. 1322 (111th Legis.1983), the 1983 amendments were viewed as a "cost saving" measure. *See also Report of Speaker's Select Committee on Workers' Compensation*, Part III, at 11–12 (Jan. 17, 1983).

5. 39 M.R.S.A. § 54 (Supp.1983), *repealed by* P.L. 1985, ch 372, § A (effective June 30, 1985), *codified as* 39 M.R.S.A. § 54–A.

as possible. Part III, *Annual Increase in Compensation Payments*, 12 (Jan. 17, 1983).

In 1987, former section 54–A was repealed and replaced by section 54–B, the section we now construe.[6] The 1987 amendment added the language creating the delay of three years from the date of injury to the payment of the inflation/deflation adjustment. The purpose of the three-year waiting period is clearly designed to reduce compensation benefits and costs to the system. *See* L.D. 1929, Statement of Fact (113th Legis.1987). Most significantly, however, the 1987 amendment made no material change to the language enacted in 1983 providing for an exception for those incapacitated employees who are precluded by the maximum benefit level from receiving two-thirds of their average weekly wage. That language reflects a recognition that the maximum benefit level operated unfairly against high-earning employees. The "except" clause operated to save high wage earners from the 1983 change in the date of the annual inflation/deflation adjustment, and granted to them the right to continue to receive the maximum benefit level on July 1 of each year, as soon as that level was adjusted pursuant to then section 53. We discern nothing in the language of section 54–B or in the Statement of Fact to indicate that the legislature intended to change the policy of allowing incapacitated wage earners whose benefits are less than two-thirds of their average weekly wage to receive adjustments to the maximum benefit level as soon as possible. Accordingly, employees such as Marchand and Napolitano are entitled to the annual inflation adjustment to their workers' compensation benefits, unaffected by the three-year delay.

The entry is:

Decision in WCB–93–266 vacated. Remanded for further proceedings consistent with the opinion herein.

Decision in WCB–93–518 affirmed.

All concurring.

---

6. P.L.1987, ch. 559, § B, 27 (effective Nov. 20, 1988), *codified as* section 54–B, *repealed by* P.L. 1991, ch. 885, § A–7 (effective Jan. 1, 1993), *codified as* 39–A M.R.S.A. § 212. The 1987 amendments also repealed former section 55–A (partial disability benefits), and replaced it with section 55–B, removing the inflation/deflation adjustment entirely for cases of partial incapacity. P.L.1987, ch. 559, § B, 29, 30 (effective Nov. 20, 1987), *repealed by* P.L.1991, ch. 885, § A–7 (effective Jan. 1, 1993), *codified as* 39–A M.R.S.A. § 213. The annual inflation/deflation adjustment, without a waiting period, was left intact for death benefits. *See* 39 M.R.S.A. § 58–A (1987), *repealed by* P.L.1991, ch. 885, § A–7 (effective Jan. 1, 1993), *codified as* 39–A M.R.S.A. § 215.