Kenneth JORDAN

v.

SEARS, ROEBUCK & COMPANY

and

Allstate Insurance Company.

Supreme Judicial Court of Maine.

Argued Sept. 22, 1994.

Decided Dec. 20, 1994.

James J. MacAdam, Maureen E. Dea (orally), McTeague, Higbee, Libner, MacAdam, Case & Watson, Topsham, for employee.

Alison Denham (orally), Douglas, Whiting, Denham & Rogers, Portland, for employer.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

GLASSMAN, Justice.

The employer, Sears, Roebuck & Company, appeals from a decision of the Appellate Division affirming the denial by the Workers' Compensation Commission of the employer's petition for coordination of benefits. The Commission held that, pursuant to 39 M.R.S.A. § 62-B (1989),[1] an employer is not entitled to a coordination of compensation benefits when an employee rolls pension benefits over into an individual retirement· account (IRA) until those funds are distributed from the IRA. We affirm the decision.

The record reflects the following undisputed facts: the employee, Kenneth Jordan, received a compensable back injury on April 29, 1987, while employed by Sears. Sears accepted liability for the injury and paid Jordan total incapacity benefits. Because of his inability to work, Jordan was forced to accept early retirement in November 1988. At the time of his retirement, Sears gave Jordan a $22,026.96 check for funds that Sears had paid into Jordan's pension account. The next day, Jordan deposited the funds in an IRA to defer taxation on the receipt of the money. *See* Internal Revenue Code, 26 U.S.C. § 402(c) (1993). Jordan, who is now 59 years of age, testified at the hearing that he intends to leave the pension funds in the IRA until he reaches the age of seventy.

In January 1992, Sears filed a petition to coordinate benefits pursuant to 39 M.R.S.A. § 62-B, seeking to have its benefit obligation reduced by the amount of the pension that had been rolled over into the IRA. The Commission denied the petition for coordination, concluding that because Jordan was not required to pay taxes on the funds that had been rolled over, Jordan had not "received" a "payment" of his pension benefits pursuant

to section 62-B. On appeal by Sears, the Appellate Division affirmed the commissioner's ruling. We granted Sears' petition for appellate review pursuant to 39-A M.R.S.A. § 322 (Supp.1993).

Sears contends that it is entitled to immediately offset the $22,026.96 in pension funds against its obligation to pay workers' compensation benefits pursuant to the plain meaning of section 62-B that provides in pertinent part:

1. **Application.** This section applies when weekly compensation is payable to an employee under section 54-B or 55-B for any period for which he is receiving or has received old age insurance benefit payments under the United States Social Security Act ... or *payments under an employee benefit plan.*

. . . .

3. **Coordination of benefits.** Benefit payments subject to this section *shall* be reduced in accordance with the following provisions.

A. The employer's obligation to pay weekly compensation under section 54-B or 55-B *shall* be reduced by:

. . . .

(2) The *after tax amount* of the *payments received* or being received under an *employee benefit plan* provided by the same employer by whom benefits under section 54-B or 55-B are payable if the employee did not contribute directly to the plan. . . .

39 M.R.S.A. §§ 62-B(1) & (3)(A)(2) (emphasis added). Section 62-B also provides the following definitions:

2. **Definitions.** As used in this section, unless the context otherwise indicates, the following terms have the following meanings.

A. "After tax amount" means the gross weekly amount of an old age insurance benefit or benefit under an employee benefit plan, reduced by the prorated

---

1. Section 62-B has been repealed and replaced by 39-A M.R.S.A. § 221 that contains similar, but not identical, language. *Maine Workers' Compensation Act of 1992,* P.L.1991, ch. 885, § A-7 (effective Jan. 1, 1993), *codified as* 39-A M.R.S.A. § 221 (Supp.1993). Because the proceeding was pending on the effective date of Title 39-A, this appeal is governed exclusively by former Title 39. *Riley v. Bath Iron Works,* 639 A.2d 626, 627-28 (Me.1994).

weekly amount which would have been paid, if any, in social security, federal income and state income taxes, calculated on an annual basis. The after tax amount of any benefits subject to income taxes shall be determined by using the maximum number of dependents' allowances to which the employee is entitled and the standard deduction or zero bracket amount applicable to the employee's filing status. The chairman of the commission shall, by rule, adopt and publish tables governing the determination of after tax amounts under this subsection.

**B.** "Employee benefit plan" means a self-insurance disability plan, wage continuation plan, disability insurance plan and a pension or retirement plan which is funded or paid for by the employer in whole or in part. . . .

39 M.R.S.A. § 62–B(2).

■ Our purpose in construing a statute is to give effect to the legislative intent. *Pinkham v. Morrill,* 622 A.2d 90, 95 (Me. 1993). In determining the legislative intent, we look first to the plain meaning of the statutory language, *Estate of Stone v. Hanson,* 621 A.2d 852, 853 (Me.1993), and we construe that language to avoid absurd, illogical or inconsistent results. *Rowe v. Chapman Trucking,* 629 A.2d 1224, 1228 (Me. 1993). In addition to examining the plain language, we also consider "the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Davis v. Scott Paper Co.,* 507 A.2d 581, 583 (Me.1986). If the statutory language is ambiguous, we then look beyond the plain meaning and examine other indicia of legislative intent, including its legislative history. *Marchand v. Eastern Welding Co.,* 641 A.2d 190, 193 (Me.1994). We have noted that decisions of the Board interpreting the Workers' Compensation Act are "entitled to great deference and will be upheld on appeal unless the statute plainly compels a different result." *Nielsen v. Burnham & Morrill, Inc.,* 600 A.2d 1111, 1112 (Me.1991).

■ We agree with Sears that the use of the word "shall" in subsection 62–B(3)(A) suggests that the employer is entitled to an immediate coordination of workers' compensation benefits on the employee's receipt of payments from an employee benefit plan. *See* 1 M.R.S.A. § 71(9–A) (Supp.1994) (use of the word "shall" in a statute indicates mandatory action). The issue in this appeal, however, is whether Jordan has "received" a "payment" that triggers the employer's right to a coordination pursuant to subsection 3(A)(2).

Sears argues that the pension funds were "received" when Sears relinquished control of those funds to Jordan. Jordan correctly notes that, pursuant to the provisions of the Internal Revenue Code, funds rolled over from a qualified employee benefit plan into an IRA are not taxed until they are ultimately distributed to the participant. I.R.C. § 408(d) (1993). Therefore, Jordan contends that the phrase "after tax amount" in subsection 2(A) modifies the words "received" and "payment" in subsection 3(A)(2) and suggests that the funds are not "received" until the employee is required to pay taxes on the receipt of those funds.

Sears also argues that the definition of "after tax amount," which requires a calculation of the "prorated weekly amount which *would have been paid,*" implicitly contemplates the possibility of a calculation of tax liability prior to the imposition of taxes. *See* 39 M.R.S.A. § 62–B(2)(A) (emphasis added). We note, however, that the phrase "would. have been paid" may also be interpreted as referring only to a forecast of tax liability on a year-by-year basis, not a forecast of future tax liability over the remaining life of an employee who is forced into early retirement by an injury.

We conclude that section 62–B is ambiguous on its face, and therefore, we look beyond the statutory language to determine the legislative intent. *See Marchand,* 641 A.2d at 193. We note, and both parties concede, that there is nothing in the legislative history that specifically addresses a coordination of benefits when, as here, an employee rolls over pension funds into an IRA. Section 62–B was enacted as part of an emergency effort to reduce insurance premiums and prevent

carriers from withdrawing business from the state. *See* L.D. 1634, Emergency Preamble (112th Legis.1985); L.D. 1634, Statement of Fact (112th Legis.1985). The legislative debate suggests that the purpose of section 62–B was to ensure a minimum income during the period of an employee's incapacity and to prevent a double recovery of both retirement and compensation benefits. 2 Legis.Rec. 1184–85 (1985). Sears cites to a passage from the floor debates, in which one Legislator comments that "the Workers' Compensation System was never really meant to supplement retirement. It was meant as wage replacement.... What this Bill does is prevent double dipping." 2 Legis.Rec. 1184–85 (1985) (statement of Sen. Dutremble). Sears contends that the phrase "double dipping" refers to an employee whose employer is required to simultaneously pay two or more types of benefits to the employee. Jordan argues in response that he has not received duplicate benefits because he has not yet received his pension money as spendable income.[2]

We note that in addition to allowing an offset for pension benefits, section 62–B also allows an offset for social security old-age benefits received by the employee. The Social Security Act does not compel an individual to apply for old-age benefits. Jordan may elect to take early old-age insurance benefits at age 62, or he may also elect to maximize his benefits by deferring his receipt of those benefits until age 65. *See* 42 U.S.C. §§ 402(a), (w) & 416(*l*) (1988). We note, however that Sears' interpretation of section 62–B, taken to its logical conclusion, would require Jordan to take Social Security benefits at age 62 to provide the earliest possible set off for his employer. We are not persuaded that the Legislature regards an injured employee's refusal to take early social security benefits as "double dipping," nor are we persuaded that it is the intent of the

Legislature to discourage employees from rolling over pension funds into an IRA.[3]

Here, Jordan did not voluntarily choose to retire. His retirement was caused by a work injury that left him unable to work. An interpretation of section 62–B that would require Jordan to exhaust his pension prior to the age he would voluntarily choose to retire would, in effect, penalize him for suffering a work-related injury and would be contrary to the purpose of the Act "to shift the economic cost of work-injuries to the employer and ultimately the consumer." *Harding v. Sheridan D. Smith, Inc.*, 647 A.2d 1193 (Me.1994).

Sears further argues that the interpretation adopted by the Commission is impractical because it encourages employees to deposit pension funds in an IRA indefinitely in order to deprive their employers of a right to a set off. This suggestion, however, is patently contrary to the provisions of the Internal Revenue Code that require the distribution of funds in an IRA when the individual reaches the age of 70½. I.R.C. § 408(a)(6); Treas.Reg. § 1.408–2(b)(6). Failure to make the required distributions at that time subjects the individual to a severe excise tax in the amount of 50% of the difference between the required minimum distribution and the actual distribution. I.R.C. § 408(a)(6); 4974(a) (1993); Treas.Reg. § 1.408–2(b)(6); 54.4974–1 (1980). Therefore, employees who choose to maintain pension funds in an IRA past the age of 70½ for the benefit of their heirs will be severely economically penalized.

Finally, Sears argues that the interpretation adopted by the Commission is unworkable because it requires the employer to monitor funds in an employee's individual accounts, which Sears contends will become more difficult with the passage of time, possible commingling of funds and the fluctuating value of investments. We are not persuaded, however, that monitoring funds in an IRA is

---

**2.** The Statement of Fact attached to an earlier draft of section 62–B suggests that the primary purpose for the coordination provision was to "reduce the chance of some workers receiving combined retirement and workers' compensation benefits in excess of their working income." L.D. 1062, Statement of Fact (110th Legis.1985).

**3.** We note that the new Act appears to expressly provide some protection to employees who are forced into early retirement. Title 39-A M.R.S.A. § 221(8) provides that "[n]othing in this section may be considered to compel an employee to apply for early federal social security old-age insurance benefits or to apply for early or reduced pension or retirement benefits." 39-A M.R.S.A. § 221(8) (Supp.1993).

any more onerous than monitoring an employee's receipt of social security benefits. Indeed, as we have noted, an employee faces severe penalties for failing to disburse pension funds from an IRA by age 70½. By contrast, there is nothing in the Social Security Act that compels an individual to apply for social security old-age benefits at any age. *See* 42 U.S.C. § 402(v) (1993).

We conclude there is nothing in the plain language or legislative history of section 62–B to suggest that the Legislature intended an immediate coordination of benefits when an employee rolls pension funds over into an IRA. We have previously held that "the rights of a party under the Workers' Compensation Act are purely statutory." *Lavoie v. International Paper Co.*, 403 A.2d 1186, 1191 (Me.1979). *See also Cote v. Georgia–Pacific Corp.*, 596 A.2d 1004 (Me.1991). Because the Legislature has not expressed an intent to allow an immediate coordination of benefits in the case of an employee who rolls over pension money into an IRA, we conclude that "[n]either the language nor the purpose of the statute requires us to vacate the Commissioner's decision." *Nielsen*, 600 A.2d at 1112.

The entry is:

Decision of the Appellate Division affirmed.

WATHEN, C.J., and ROBERTS, and DANA, JJ., concurring.

RUDMAN, Justice, dissenting, with whom CLIFFORD, Justice, joins.

I must respectfully dissent.

I agree with the court that we must construe a statute to give effect to the legislative intent. It is only when the statutory language is ambiguous on its face that we should look beyond the language of the statute to determine that legislative intent.

I have no problem in applying the plain language of section 62–B and although were I the Legislature, I might have acted differently, as a judge I must restrain my legislative instincts and apply the plain language of the statute. The statute clearly states that it applies to weekly compensation payable to an employee for any period in which he is receiving payments under an employee benefit plan. The term "employee benefit plan" is statutorily defined to include a retirement plan funded or paid for by the employer. Jordan is receiving compensation pursuant to the Act and did receive a payment from his employer's retirement plan. The fact that Jordan took advantage of provisions of the Internal Revenue Code that allow him to defer taxation on receipt of the money does not change the fact that he received the payment and section 62–B requires that his benefits be reduced.

As the court acknowledges, section 62–B was enacted as part of an emergency effort to reduce insurance premiums and prevent carriers from withdrawing business from the state. We may not speculate whether or not the Legislature contemplated the effect of a "rollover." We should apply the statute as written and not as we might have written it. I would vacate the decision of the Appellate Division and remand to the Workers' Compensation Board for coordination of benefits pursuant to 39 M.R.S.A. § 62–B.