2004 ME 106

**Helen ST. PIERRE**

v.

**FALCON SHOE et al.**

Supreme Judicial Court of Maine.

Argued: April 14, 2004.

Decided: Aug. 11, 2004.

Benjamin E. DeTroy, Esq. (orally), Sharon, Leary & DeTroy, Auburn, for employee.

James E. Fortin, Esq. (orally), Deborah Buccina, Esq., Douglas, Denham, Buccina & Ernst, P.A., Portland, for employer.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] The employee, Helen St. Pierre, appeals from a decision of a hearing officer of the Workers' Compensation Board

---

(*Goodnough, HO* ), allowing the employer to reduce workers' compensation benefit payments by the amount the employee withdrew from an employer-provided profit sharing plan and rolled over into an IRA. *See* 39–A M.R.S.A. § 221(3)(A)(6)[1] (2001). St. Pierre contends that, because she rolled the profit sharing plan funds directly into an Individual Retirement Account (IRA), she did not "receive" "payments" from the profit sharing plan for purposes of generating a reduction pursuant to section 221. We agree and vacate the decision of the hearing officer.

## I. BACKGROUND

[¶ 2] The parties have stipulated to the following facts: St. Pierre, who is now fifty-five years old, began working at Falcon Shoe in 1977. Without accepting liability, Falcon voluntarily paid benefits with respect to allegedly work-related injuries in 1998 and 2000. St. Pierre was laid off from Falcon in March 2001, along with thirty-nine other employees as part of a general work slowdown. St. Pierre was receiving voluntary partial incapacity benefits at varying rates at the time of her layoff.

[¶ 3] St. Pierre had accrued roughly $55,000 in a profit sharing plan provided by Falcon for its employees. St. Pierre withdrew $15,452.36 from the account for her immediate use, and rolled over the remaining $40,172.72 into an IRA. The parties have stipulated that the profit sharing plan meets "the requirements of a qualified profit sharing plan under the Internal Revenue Code as required by Section 221(3)(A)(6)." Falcon filed petitions with the Board, seeking to determine its right to reduce weekly benefit payments by the amount of the employer contributions to the profit sharing plan. The issue was presented to the hearing officer on the parties' stipulation of facts without an evidentiary hearing.

[¶ 4] The hearing officer concluded that Falcon could properly reduce its obligation to pay benefits by the $15,452.36 that the employee had withdrawn from the plan, and for the $39,743.65 that constituted the value of Falcon's contribution to that portion of the profit sharing plan that St. Pierre rolled over into the IRA. The hearing officer denied St. Pierre's motion for further findings of fact and conclusions of law, and we granted her petition for appellate review pursuant to 39–A M.R.S.A. § 322 (2001).[2]

1. Section 221(3)(A)(6) provides in pertinent part:

3. Coordination of benefits. Benefit payments subject to this section must be reduced in accordance with the following provisions:

A. The employer's obligation to pay or cause to be paid weekly benefits other than benefits under section 212, subsection 2 or 3 is reduced by the following amounts:

. . . .

(6) For those employers who do not provide a pension plan, the proportional amount, based on the ratio of the employer's contributions to the total contributions made to a qualified profit sharing plan under the United States Internal Revenue Code, Section 401(a) or any successor to the United States Internal Revenue Code, Section 401(a) covering a profit sharing plan that provides for the payment of benefits only upon retirement, disability, death, or other separation of employment to the extent that benefits are vested under the plan.

39–A M.R.S.A. § 221(3)(A)(6) (2001).

2. St. Pierre does not appeal from the hearing officer's decision to permit the employer a reduction for the $15,452.36 that St. Pierre withdrew from the profit sharing plan in cash. St. Pierre's appeal is concerned solely with the hearing officer's decision to grant the employer a reduction for $39,734.65 of the employer's contribution to the profit sharing plan that she had rolled over into an IRA.

## II. DISCUSSION

[¶ 5] We addressed a similar issue in *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 362 (Me.1994). In that case, the employee, Jordan, took early retirement from his employment when a work injury prevented him from returning to work. *Id.* at 359. The employer, Sears, sought to reduce its obligation to pay incapacity benefits by the amount of pension benefits that the employee had immediately rolled over into an IRA upon retirement. *Id.* The hearing officer declined to permit the offset, and we affirmed. *Id.* at 362.

[¶ 6] Interpreting former 39 M.R.S.A. § 62–B (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 221),[3] we characterized the issue in *Jordan* as "whether Jordan has 'received' a 'payment' that triggers the employer's right to a coordination pursuant to subsection 3(A)(2)." *Id.* at 360. We concluded that former section 62–B was "ambiguous on its face" with respect to an IRA rollover of pension benefits, thereby justifying consideration of the legislative history to determine legislative intent. *Id.* Finding nothing conclusive in the legislative history, we next examined, by analogy, the statute's treatment of Social Security benefits:

We note that in addition to allowing an offset for pension benefits, section 62–B also allows an offset for social security old-age benefits received by the employee. The Social Security Act does not compel an individual to apply for old-age benefits. Jordan may elect to take early old-age insurance benefits at age 62, or he may also elect to maximize his benefits by deferring his receipt of those benefits until age 65. *See* 42 U.S.C. §§ 402(a), (w) & 416(1) (1988). We note, however that Sears' interpretation of section 62–B, taken to its logical conclusion, would require Jordan to take Social Security benefits at age 62 to provide the earliest possible set off for his employer. We are not persuaded that the Legislature regards an injured employee's refusal to take early social security benefits as "double dipping," nor are we persuaded that it is the intent of the Legislature to discourage employees from rolling over pension funds into an IRA.

Here, Jordan did not voluntarily choose to retire. His retirement was caused by

3. Former title 39, section 62–B provided, in pertinent part:

1. Application. This section applies when weekly compensation is payable to an employee under section 54–B or 55–B for any period for which he is receiving or has received old age insurance benefit payments under the United States Social Security Act ... or payments under an employee benefit plan.

. . . .

3. Coordination of benefits. Benefit payments subject to this section shall be reduced in accordance with the following provisions.

A. The employer's obligation to pay weekly compensation under section 54–B or 55–B shall be reduced by:

. . . .

(2) The after tax amount of the payments received or being received under an employee benefit plan provided by the same employer by whom benefits under section 54–B or 55–B are payable if the employee did not contribute directly to the plan; and

(3) The proportional amount, based upon the ratio of the employer's contributions to the total contributions, of the after tax amount of the payments received or being received by the employee under an employee benefit plan provided by the same employer by whom benefits under section 54–B or 55–B are payable if the employee did contribute directly to the plan.

39 M.R.S.A. § 62–B (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 221).

a work injury that left him unable to work. An interpretation of section 62–B that would require Jordan to exhaust his pension prior to the age he would voluntarily choose to retire would, in effect, penalize him for suffering a work-related injury and would be contrary to the purpose of the Act "to shift the economic cost of work-injuries to the employer and ultimately the consumer." *Harding v. Sheridan D. Smith, Inc.*, 647 A.2d 1193 (Me.1994).

*Id.* at 361 (footnote omitted).

[¶ 7] The hearing officer in the present case has tried to distinguish our opinion in *Jordan*, 651 A.2d 358, by relying on changes in the language of the current set-off provision, 39–A M.R.S.A. § 221(3)(A)(6), as compared with former 39 M.R.S.A. § 62–B. The hearing officer stated that "[u]nlike [former] section 62–B(3)(A)(2) (as interpreted by the Law Court in *Jordan*), section 221(3)(A)(6) does not require receipt of payment (whether directly or indirectly through an IRA rollover) nor does it specify the tax status of the funds that must be coordinated." We disagree.

[¶ 8] Section 221 is not essentially different from former section 62–B for purposes of the issue in this appeal. We concluded in *Jordan* that an employee who rolled over early retirement benefits into an IRA did not "receive" the pension payments. While paragraph 221(3)(A)(6)—addressing profit sharing plans—does not expressly refer to the "receipt" of "payments," this paragraph should be read in conjunction with section 221(1), which does refer to employees who "receive" "payments" under a benefits plan.

1. Application. This section applies when either weekly or lump sum payments are made to an employee as a result of liability pursuant to section 212 or 213 with respect to the same time period for which the employee is also receiving or has received payments for:

. . . .

C. Pension or retirement payments pursuant to a plan or program established or maintained by the employer.

39–A M.R.S.A. § 221(1)(C).

[¶ 9] Furthermore, we expressly made reference to the language of current section 221(8) [4] in *Jordan*, which protects employees who take early retirement:

We note that the new Act appears to expressly provide some protection to employees who are forced into early retirement. Title 39–A M.R.S.A. § 221(8) provides that "[n]othing in this section may be considered to compel an employee to apply for early federal social security old-age insurance benefits or to apply for early or reduced pension or retirement benefits."

*Jordan*, 651 A.2d at 361 n. 3. Section 221(8) contains additional evidence of a legislative intent to protect employees who are forced into early retirement and roll over retirement or pension funds into an IRA.

[¶ 10] We conclude that, because St. Pierre did not receive payments of benefits from the profit sharing plan when she rolled over the funds into an IRA, it was error for the hearing officer to permit Falcon to reduce its obligation to pay workers' compensation benefits as a result.

The entry is:

---

**4.** Section 221 provides in pertinent part:

8. Early retirement. Nothing in this section may be considered to compel an employee to apply for early federal social secu-

rity old-age insurance benefits or to apply for early or reduced pension or retirement benefits.

39–A M.R.S.A. § 221(8).

The decision of the hearing officer of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.