## Christine R. FOLEY [1]

### v.

## VERIZON et al.

Supreme Judicial Court of Maine.

Argued: April 9, 2007.

Decided: Sept. 11, 2007.

1. Christine R. Foley, individually and as personal representative of the Estate of Kevin B. Foley, was substituted as a party after the death of Kevin B. Foley.

of benefits provision, 39–A M.R.S. § 221 (2006), and the receipt of a lump-sum pension benefit. Foley contends that the hearing officer erred in treating the lump-sum pension benefit as though it were being received in weekly installments. Foley also argues that the hearing officer erred in finding that Verizon did not violate the "fourteen-day rule," Me. W.C.B. Rule, ch. 1, § 1. Foley further contends that the hearing officer erred in concluding that Verizon did not violate 39–A M.R.S. § 221(3)(D) (2006) when it reduced the benefits without a formal determination of the benefit amount and without giving twenty-one days notice, pursuant to 39–A M.R.S. § 205(9)(B)(1) (2006). We affirm the hearing officer's decision.

## I. BACKGROUND

[¶ 2] Kevin Foley began working for Verizon's predecessors in 1972. He injured his right shoulder while working for Verizon on April 26, 2003. After the injury, Verizon began paying him total incapacity benefits pursuant to a memorandum of payment filed with the Board, indicating that it was making "voluntary payment pending investigation."

[¶ 3] Effective May 3, 2004, Foley retired from Verizon, accepting a severance/pension package. He received a lump sum payment of his pension benefits from Verizon in the amount of $355,610.12. That same day, Foley began receiving a monthly Social Security supplement payment from Verizon in the amount of $500.

[¶ 4] Upon Foley's retirement, and without notice to him, Verizon stopped paying the weekly workers' compensation benefit. Foley contacted the claims adjuster who told him that he could not receive both pension and workers' compensation benefits. Foley's attorney sent letters to Verizon contesting the discontinuance. Foley filed a petition for award and order of

Alexander F. McCann, Esq. (orally), Law Offices of Alexander McCann, P.A., Portland, for employee.

Allan M. Muir, Esq. (orally), Elizabeth Eddy Griffin, Esq., Pierce Atwood LLP, Portland, for employer.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CALKINS, J.

[¶ 1] Christine R. Foley appeals from a decision of a hearing officer of the Workers' Compensation Board (*Collier, HO*), reducing Kevin B. Foley's benefits. The basis for the reduction is the coordination

payment on September 24, 2004. Verizon filed a notice of controversy on October 7, 2004.

[¶ 5] A hearing was held. No testimony was taken, but the parties agreed to a statement of facts, and both submitted various exhibits. The parties stipulated that Foley's average weekly wage at the time of his injury was $1228.16, and his compensation rate was $773.95. Verizon had been paying weekly incapacity benefits to Foley in the amount of $491.35. The parties agreed that Verizon gave no notice to Foley before stopping his workers' compensation benefits. The parties stipulated to the retirement date and amount of the lump sum pension benefit paid by Verizon. They agreed that as of November 8, 2005, Foley had a post-injury earning capacity of $400 weekly.[2]

[¶ 6] The hearing officer determined that Verizon's unilateral reduction of Foley's workers' compensation benefits did not violate section 221(3)(D) and that Foley did not make a clear assertion of benefits that triggered the fourteen-day rule until his lawyer's letter of September 23, 2004, to which Verizon responded within fourteen days. On the coordination of benefits issue, the hearing officer rejected the "payment holiday" proposal by Verizon and also rejected Foley's proposal of calculating the after-tax value of his lump sum pension payment, spread out over his life expectancy of 23.8 years. Instead, the hearing officer used the monthly amount of the pension benefit that Foley would have received if he had not opted to take a lump sum, as the basis for a calculation using the weekly benefits tables promulgated by the Board. This resulted in a determination that Foley was entitled to no workers' compensation benefits at the time he received his lump sum pension on May 3, 2004. Because of increases in the weekly maximum benefit level, Foley was entitled to a weekly workers' compensation benefit of $5.54 from July 1, 2004, until June 30, 2005, and $24.74 until November 8, 2005, at which time he had an earning capacity of $400 weekly and the workers' compensation benefit was lower than the hypothetical monthly pension amount, thereby reducing his workers' compensation benefit to zero.

## II. DISCUSSION

### A. Coordination of Benefits

■ [¶ 7] In order to keep injured employees from receiving more income from a combination of Social Security or retirement benefits plus workers' compensation benefits than they would receive if they continued to work, the Legislature enacted a coordination of benefits provision.[3] That provision, now found at 39–A M.R.S. § 221(3)(A)(4), provides:

3. Coordination of benefits. Benefit payments subject to this section must be reduced in accordance with the following provisions.

A. The employer's obligation to pay or cause to be paid weekly benefits ... is reduced by the following amounts:

---

**2.** The parties also agreed that the retirement presumption of 39–A M.R.S. § 223 (2006) does not apply.

**3.** The Statement of Fact that accompanied the prior version of Maine's coordination provision, 39 M.R.S.A. § 62–B (1989), states: "The purpose of coordination of benefits is to preclude anyone from receiving a greater income because of the receipt of Social Security or retirement benefits along with workers' compensation than they would have received had they continued to work." Sen. Amend. B to L.D. 1634, No. S–217, Statement of Fact (112th Legis.1985). The Statement of Fact that follows the current coordination provision states that section 221 "allows coordination of benefits in a manner similar to the former Title 39, section 62–B ...." L.D. 2464, Statement of Fact, § A, at 214 (115th Legis.1992).

. . . .

(4) The after-tax amount of the pension or retirement payments received or being received pursuant to a plan or program established or maintained by the same employer from whom benefits under section 212 or 213 are received, if the employee did not contribute directly to the pension or retirement plan or program.

[¶ 8] The phrase in section 221(3), "[b]enefits payments subject to this section" includes "[p]ension or retirement payments pursuant to a plan or program established or maintained by the employer." 39–A M.R.S. § 221(1)(C). There is no dispute that Foley's lump sum retirement payment and $500 monthly Social Security supplement are benefit payments covered by the coordination of benefits provision.

[¶ 9] The "after-tax amount of the pension or retirement payments," referred to in section 221(3)(A)(4), must be determined by reference to tables published by the Board pursuant to 39–A M.R.S. § 102(1). 39–A M.R.S. § 221(2).[4] The tables convert the value of weekly installments into after-tax amounts. Neither the statute nor the

tables provide instructions on converting lump sum amounts. Instead, they assume the use of weekly amounts.

■ [¶ 10] Because the statute and tables are silent on the treatment of lump sum amounts and the Board has not promulgated a rule to cover this statutory vacuum, we must discern the intent of the Legislature from the whole statutory scheme and the legislative history and determine whether the hearing officer's manner of treating Foley's lump sum was consistent with that intent. In construing a statute, our primary purpose is to give effect to the intent of the Legislature. *Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 360 (Me.1994).

[¶ 11] In referring to a previous version of the coordination of benefits statute, we said: "The legislative debate suggests that the purpose of section 62–B was to ensure a minimum income during the period of an employee's incapacity and to prevent a double recovery of both retirement and compensation benefits." *Jordan,* 651 A.2d at 361. We have recognized other purposes of the coordination of benefits provision including reducing premiums and preventing the stacking of benefits. *Ricci v. Mercy Hosp.,* 2002 ME 173, ¶ 10, 812 A.2d 250, 252.

**4.** Title 39–A M.R.S. § 221(2) (2006) provides:
2. Definitions. As used in this section, "after-tax amount" means the gross amount of any benefit under subsection 3, paragraph A, subparagraph (2), (3), (4) or (5) reduced by the prorated weekly amount which would have been paid, if any, under the Federal Insurance Contributions Act, 26 United States Code, Sections 3101 to 3126, state income tax and federal income tax, calculated on an annual basis using as the number of exemptions the disabled employee's dependents plus the employee, and without excess itemized deductions. In determining the "after-tax amount" the tables provided for in section 102, subsection 1 must be used. The gross amount of any benefit under subsection 3, paragraph A,

subparagraph (2), (3), (4) or (5) is presumed to be the same as the average weekly wage for purposes of the table. The applicable 80% of after-tax amount as provided in the table, multiplied by 1.25, is conclusive for determining the "after-tax amount" of benefits under subsection 3, paragraph A, subparagraph (2), (3), (4) or (5).
Title 39–A M.R.S. § 102(1) (2006) provides in relevant part: "Each December 1st the board shall publish tables of the average weekly wage and 80% of after-tax average weekly wage that will take effect on the following January 1st. These tables are conclusive for the purpose of converting an average weekly wage into 80% of after-tax average weekly wage."

[¶ 12] The method chosen by the hearing officer was to convert the lump sum retirement pension to a weekly amount by using the periodic amount that Foley would have been entitled to if he had not chosen the lump sum. That amount was $2009.48 monthly. To that sum the hearing officer added the $500 monthly Social Security supplement that Verizon was also paying to Foley. The hearing officer converted the $2509.48 monthly amount to a weekly amount of $579.11. With the information that Foley filed a joint tax return with his wife, claiming three dependents, the hearing officer used the tables created pursuant to section 102(1) to arrive at a weekly amount of 80% of the after-tax amount, which is $414.13. As instructed by section 221(2), the hearing officer multiplied that amount by 1.25 and arrived at the weekly after-tax benefit amount of $517.66. The hearing officer then went on to subtract this amount of retirement benefits from the amount of workers' compensation benefits that Foley was entitled to between May 3, 2004, the date he received his retirement benefit, and February 10, 2006, the date of the hearing officer's decision.

[¶ 13] The parties do not challenge any of the mathematical calculations of the hearing officer. The sole challenge to the workers' compensation benefit amount is the use of the monthly pension amount that he would have received but for his election to take a lump sum.

[¶ 14] The hearing officer rejected Foley's contention that the plain language of section 221(3)(A)(4) requires only a one-time offset during the week that the pension benefit was received. The hearing officer correctly reasoned that this interpretation is inconsistent with the legislative intent to preclude double recoveries and would cause an absurd or illogical result. The hearing officer also rejected Foley's other proposal of dividing the after-tax lump sum amount by Foley's life expectancy because it did not meet the statutory requirement of using the tables.

[¶ 15] Verizon proposed that Foley receive no workers' compensation benefits until such time as the lump sum amount is depleted by crediting the weekly sum that Verizon otherwise would have paid in workers' compensation benefits. The hearing officer rejected this proposal because it did not adhere to the after-tax amount of the retirement payment as required by section 221(4) and did not utilize the tables.

[¶ 16] We affirm the hearing officer's use of the monthly pension amount because it is a common sense and practical method that meets the overall purpose of the coordination of benefits provision; is not otherwise prohibited by statute or rule; utilizes as much of the statutory requirements as can be used given the lack of a provision for lump-sum retirement benefits; and is better than any of the alternatives offered by the parties.

B.  The Fourteen–Day Rule

[¶ 17] The "fourteen-day rule" requires that an employer accept a claim or file a notice of controversy within fourteen days of "notice or knowledge" of a "claim for incapacity or death benefits." Me. W.C.B. Rule, ch. 1, § 1.[5] If the employer

---

5.  The Rule provides, in full:

   1.  Claims for Incapacity and Death Benefits

   1.  Within 14 days of notice or knowledge of a claim for incapacity or death benefits for a work-related injury, the employer or insurer will:

   A.  Accept the claim and file a Memorandum of Payment checking "Accepted" in Box 18; or

   B.  Pay without prejudice and file a Memorandum of Payment checking "Voluntary Payment Pending Investigation" in Box 18; or

files the notice of controversy beyond fourteen days, it must pay total incapacity benefits from the date of incapacity to the date of filing. *Id.* The obligation stops when the notice is filed along with payment of accrued benefits. *Id.*

[¶ 18] When Verizon stopped paying Foley's weekly workers' compensation benefits, Foley contacted the claims adjuster to complain and was told that he could not receive both pension benefits and workers' compensation benefits. Foley's attorney sent two letters to Verizon dated August 5, 2004, and September 23, 2004, contesting the discontinuance and asserting continued entitlement to workers' compensation benefits. In response, Verizon filed a notice of controversy on October 7, 2004. Foley contends that the telephone call and letters constitute assertions of a claim for incapacity benefits, which Verizon did not timely pay or controvert.

[¶ 19] The hearing officer found the initial telephone call was not an "outright assertion of a claim for benefits, but merely an inquiry into the status of the claim." The hearing officer further found that the August 5, 2004, letter did not suffice as an assertion of a claim because the copy submitted in evidence was largely unreadable. The hearing officer determined that the letter of September 23, 2004, constituted a "clear assertion of a claim," and that the notice of controversy filed on October 7 constituted a timely response. These are factual findings which we do not disturb.

*See* 39–A M.R.S. § 318 (2006) (providing that the hearing officer's decision "on all questions of fact is final"). We, therefore, affirm the hearing officer's determination that the fourteen-day rule was not violated.

## C. Verizon's Unilateral Reduction of Foley's Workers' Compensation Benefits

[¶ 20] Foley argued before the hearing officer and us that Verizon violated the coordination of benefits provision when it stopped his workers' compensation benefits in May 2004. Section 221(3)(D) provides that "a credit or reduction of benefits otherwise payable for any week may not be taken under this section until there has been a determination of the benefit amount otherwise payable to the employee under section 212 or 213 and the employee has begun receiving the benefit payments." Sections 212 and 213 refer to the provisions governing compensation for total incapacity and partial incapacity, respectively. 39–A M.R.S. §§ 212, 213 (2006).

[¶ 21] Foley contends that section 221(3)(D) means that until there was a formal determination of the amount of workers' compensation benefits owing to Foley, his benefits could not be reduced. According to Foley, because Verizon was paying the workers' compensation benefits voluntarily "pending investigation," there had been no formal determination of the amount.

> C. Deny the claim and file a Notice of Controversy.
>
> 2. *If the employer fails to comply with the provisions of Rule 1.1, the employee must be paid total benefits, with credit for earnings and other statutory offsets, from the date of incapacity in accordance with 39–A M.R.S.A. Sec. 205(2) and in compliance with 39–A M.R.S.A. Sec. 204.* The requirement for payment of benefits under this subsection automatically ceases upon the filing of a Notice of Controversy and the payment of any accrued benefits.

> 3. Payment under Section 1.2 requires the filing of a Memorandum of Payment.
>
> 4. Benefits paid under this section are indemnity payments and are credited toward future benefits in the event that benefits are ordered or paid.
>
> 5. Failure to comply with the provisions of Rule 1.1 may also result in the imposition of penalties pursuant to 39–A M.R.S.A. Secs. 205(3), 359, and 360.
>
> Me. W.C.B. Rule, ch. 1, § 1 (emphasis added).

■ [¶ 22] Section 221(3)(D), however, does not use the term "formal determination of benefit amount." It simply refers to the "determination of the benefit amount" that would otherwise be payable for total or partial incapacity. In Foley's case, a determination had been made as to his workers' compensation benefit amount, and he had been receiving benefits for total incapacity. The hearing officer did not err in concluding that Verizon's unilateral reduction of benefits did not violate section 221(3)(D).

■ [¶ 23] Foley also argues that 39–A M.R.S. § 205(9)(B)(1) prohibits Verizon from reducing the workers' compensation benefits until Verizon gave notice twenty-one days in advance. However, the coordination of benefits statute provides that "[b]enefits … must be reduced," 39–A M.R.S. § 221(3), and in *Jordan*, we said that this means that "the employer is entitled to an immediate coordination of workers' compensation benefits on the employee's receipt of payments from an employee benefit plan."[6]  651 A.2d at 360.  In other words, we interpreted the coordination of benefits provision as an exception to the requirements of section 205(9)(B)(1).  We see no basis in this case for straying from that interpretation.

The entry is:

Judgment affirmed.

6. *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994), was interpreting an earlier provision of the coordination of benefits provision, 39 M.R.S.A. § 62–B(3) (1989), which stated "[b]enefit payments subject to this section *shall* be reduced in accordance with the following provisions." (Emphasis added.)  The current statute, 39–A M.R.S. § 221(3) (2006), uses the word "must" instead of "shall," but that difference is of no consequence.  *See* 1 M.R.S. § 71(9–A) (2006).