MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 24
Docket:       WCB-16-524
Argued:       September 13, 2017
Decided:      February 8, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:     SAUFLEY, C.J., and MEAD, GORMAN, HJELM, and HUMPHREY, JJ.
Dissent:      JABAR and ALEXANDER, JJ.

VICTOR S. URRUTIA

v.

INTERSTATE BRANDS INTERNATIONAL et al.

HJELM, J.

[¶1] After sustaining injuries in an industrial workplace accident, Victor S. Urrutia was paid total incapacity workers' compensation benefits by his employer, Interstate Brands International. For more than three years, he received the full amount of those benefits while also collecting Social Security retirement benefits. When Interstate learned that Urrutia was receiving Social Security benefits, it sought a credit, by way of a payment holiday, against ongoing incapacity payments pursuant to a statutory provision that reduces the amount of incapacity benefit payments by half of the amount of retirement benefits the employee is also receiving. *See* 39-A M.R.S. § 221 (2017).

2

[¶2]  A hearing officer (*Stovall, HO*)[1] ordered that Interstate was entitled to a credit of $24,131.38, but the Workers' Compensation Appellate Division decided the issue differently, determining that section 221 does not allow a reduction based on incapacity overpayments made in the past.  On this appeal by Interstate and ACE American Insurance Company (collectively, Interstate), we conclude that section 221 entitles an employer to a credit for workers' compensation benefits previously paid for the same liability period when the employee also was receiving Social Security retirement benefits.  We therefore vacate the decision of the Appellate Division.

## I.  BACKGROUND

[¶3]  The following facts are undisputed by the parties and established by the record.

[¶4]  In 2001, Victor Urrutia began working for Interstate as a production mechanic.  In July 2009, when he was 62 years old, Urrutia slipped on a catwalk in the workplace and grabbed a railing to catch himself, resulting in injuries to his spine and extremities.

[¶5]    Interstate began paying Urrutia total incapacity workers' compensation benefits in December 2010.    Unbeknownst to Interstate,

---

[1]  The hearing occurred on April 11, 2014, prior to the change in title from "hearing officer" to "administrative law judge."  *See* P.L. 2015 ch. 297 (effective Oct. 15, 2015).

however, Urrutia had started receiving Social Security retirement benefits in August 2010.[2]  In May 2013, Interstate sent Urrutia a Certificate Authorizing Release of Benefit Information for him to sign so that Interstate could obtain his Social Security records.  In August 2013, Interstate was informed by Urrutia that he had been and was currently receiving Social Security retirement benefits.

[¶6]  In a petition filed with the Workers' Compensation Board, Interstate sought a determination that pursuant to section 221 it was entitled to reduce Urrutia's ongoing workers' compensation benefits by half of the amount of his Social Security retirement benefits—a reduction that Urrutia ultimately did not contest.  Interstate also sought a credit pursuant to section 221, by way of a payment holiday, for amounts it had overpaid Urrutia before learning that he had been receiving retirement benefits.

[¶7]  After a contested hearing held on the latter issue in April 2014, a hearing officer granted Interstate's petition, concluding that section 221 entitled Interstate to "a credit for all periods for which the employee received old-age [S]ocial [S]ecurity benefits and workers' compensation benefits."  For

---

[2] Interstate disclaims any contention that Urrutia acted in bad faith by not advising Interstate that he was collecting Social Security retirement benefits while also receiving the full amount of total incapacity benefits.

4

that reason, the hearing officer ordered that Interstate "may cease lost wage benefits payment until such time as it exhausts its credit of $24,141.38" that accrued between December 2010 and November 2013—the period when Urrutia was receiving both Social Security retirement benefits and the full amount of incapacity benefits.

[¶8] Urrutia appealed the hearing officer's decree to the Appellate Division, *see* 39-A M.R.S. § 321-B (2017), which vacated the decree, concluding that the plain language of section 221 does not permit a credit for incapacity overpayments already made to the employee when the employee was also receiving Social Security benefits, and that the section 221 credit may be applied only against ongoing incapacity benefits that are being paid for the "same time period" as the Social Security retirement benefits. The Appellate Division concluded that Interstate therefore was not entitled to a credit based on Urrutia's past receipt of retirement benefits. Interstate filed a timely petition for appellate review, which we granted. *See* 39-A M.R.S. § 322 (2017); M.R. App. P. 23 (Tower 2016).[3]

---

[3] The restyled Maine Rules of Appellate Procedure do not apply because this appeal was filed prior to September 1, 2017. *See* M.R. App. P. 1 (restyled Rules).

## II. DISCUSSION

[¶9]  This case calls for us to address an issue we have not previously had occasion to consider: whether the "coordination of benefits" statute in the Workers' Compensation Act, 39-A M.R.S. § 221(1), entitles an employer to a credit against ongoing incapacity benefit payments for overpayments made in the past while the employee was also receiving "old-age" Social Security benefit payments (i.e., retirement benefit payments).

[¶10]  Section 221(1) provides for an adjustment of the amount of workers' compensation benefits when

> either weekly or lump sum payments are made to an employee as a result of liability pursuant to section 212 or 213 *with respect to the same time period* for which the employee is also receiving or has received payments for:
>
> A. Old-age insurance benefit payments under the United States Social Security Act, 42 United States Code, Sections 301 to 1397f.

(Emphasis added.)  The amount of the adjustment is determined pursuant to section 221(3), which provides, in pertinent part:

> Benefit payments subject to this section *must be reduced* in accordance with the following provisions.
>
> A. The employer's obligation to pay or cause to be paid weekly [incapacity] benefits . . . is reduced by the following amounts:

6

> (1)   Fifty percent of the amount of the old-age insurance benefits *received or being received* under the United States Social Security Act.

(Emphasis added.)

[¶11]  The question presented here is whether the "same time period" identified in section 221(1) means the period when the employee is actually *receiving* both the retirement benefit and the incapacity benefit that is subject to the adjustment, or the period when the employer is—or was—*liable* for incapacity benefits and the employee is—or was—receiving retirement benefits.  If the phrase in section 221(1), "the same time period," modifies "payments"—the construction urged by Urrutia—then an employer would be entitled to a reduction only of those payments made during the same period when the employee contemporaneously received old-age retirement benefits, and Interstate would not be entitled to a retroactive credit on account of Urrutia's receipt of retirement benefits from December 2010 through November 2013.  If, however—as Interstate asserts—"the same time period" modifies "liability," then an employer would be entitled to a credit for the same period when the employer was liable for incapacity benefits and for which the employee received retirement benefits, regardless of when the incapacity

payments were actually made, thereby entitling the employer to a retroactive credit.

[¶12]  The resolution of this dispute is entirely a matter of statutory construction.  *See Beaulieu v. Maine Med. Ctr.*, 675 A.2d 110, 112 (Me. 1996) ("'[T]he law of workers' compensation is uniquely statutory.'") (quoting *Wentzell v. Timberlands, Inc.*, 412 A.2d 1213, 1215 (Me. 1980)).  "Statutory interpretation is a question of law that we review de novo."  *Darling's v. Ford Motor Co.*, 2003 ME 21, ¶ 7, 825 A.2d 344; *see also Freeman v. NewPage Corp.*, 2016 ME 45, ¶ 5, 135 A.3d 340.  "'Our main objective in statutory interpretation is to give effect to the Legislature's intent.'"  *City of Bangor v. Penobscot County*, 2005 ME 35, ¶ 9, 868 A.2d 177 (quoting *Town of Eagle Lake v. Comm'r, Dep't of Educ.*, 2003 ME 37, ¶ 7, 818 A.2d 1034).  "[W]e look first to the plain meaning of the statutory language" in order to determine that intent.  *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me. 1994).  In doing so, we "construe that language to avoid absurd, illogical or inconsistent results," and we consider "the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved."  *Id.* (citations omitted) (quotation marks omitted); a*ccord Ford Motor Co. v. Darling's*, 2014 ME 7, ¶ 25, 86 A.3d 35; *Town of Eagle Lake*, 2003 ME 37, ¶ 7,

818 A.2d 1034; *Hallissey v. School Admin. Dist. No. 77*, 2000 ME 143, ¶ 14, 755 A.2d 1068. If a statute is unambiguous, we will not defer to an agency's interpretation of that statute. *See Workers' Comp. Bd. Abuse Investigation Unit v. Nate Holyoke Builders, Inc.*, 2015 ME 99, ¶ 16, 121 A.3d 801 ("Because the statutes at issue in this case are unambiguous, we need go no further in our examination of them than their plain meaning."); *Friedman v. Bd. of Envtl. Prot.*, 2008 ME 156, ¶ 9, 956 A.2d 97; *Cobb v. Bd. of Counseling Prof'ls Licensure*, 2006 ME 48, ¶ 13, 896 A.2d 271; *see also Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-43 (1984); *Bailey v. City of Lewiston*, 2017 ME 160, ¶ 9, 168 A.3d 762 (stating that we will not defer to the Appellate Division's interpretation of the Workers' Compensation Act where the statute's plain language and legislative history "compel a contrary result").

[¶13] Applying these established principles of statutory construction, we conclude that the plain language of section 221(1) unambiguously entitles an employer to a credit based on an employee's past receipt of Social Security retirement benefits. We make this determination based on several aspects of the language of section 221, as well as a consideration of the underlying purpose of the statute.

[¶14]  We first note the grammatical structure of the pertinent part of section 221(1), which lacks a comma or other punctuation to separate the references to "liability" and "the same time period."  This indicates that the phrase "with respect to the same time period" modifies the immediately preceding word—"liability"—rather than "payments," which appears earlier in that sentence.  *See Labbe v. Nissen Corp.*, 404 A.2d 564, 567 (Me. 1979) ("A comma is generally used to indicate the separation of words, phrases, or clauses from others not closely connected in the structure of the sentence.").

[¶15]  Next, and more substantively, by its express terms section 221(1) provides for a reduction of the amount of workers' compensation payments made for a period during which the employee "is also receiving or *has received* payments" for old-age Social Security benefits.  39-A M.R.S. § 221(1)(A) (emphasis added).  The reference to past receipt of retirement benefits demonstrates that the Legislature intended that the amount of incapacity payments is to be coordinated with other qualifying benefits—including Social Security retirement benefits—even when the benefits were received in the past, before the adjustment is implemented.

[¶16]  Another provision contained in section 221 specifically refers to a "*credit* or reduction" of incapacity benefits based on an employee's receipt of

Social Security benefits. *See* 39-A M.R.S. § 221(3)(B) (emphasis added). The words "credit" and "reduction" must be seen to signify distinct recovery mechanisms in order to avoid either word becoming surplusage. *See Hickson v. Vescom Corp.*, 2014 ME 27, ¶ 15, 87 A.3d 704. This demonstrates that while section 221 allows for a "reduction" of ongoing incapacity payments arising from the employee's receipt of Social Security retirement benefits, the statute also provides for something different, namely, a "credit," which—in light of the statutory reference to a "reduction"—can only be based on past overpayments.

[¶17] The availability of a "credit or reduction" also corresponds to the statutory reference in section 221(1) to Social Security benefits "received or being received" by the employee: past overpayment of incapacity benefits when the employee also "received" retirement benefits entitles the employer to a "credit," whereas the employer is entitled to a "reduction" of incapacity benefits being presently paid based on retirement benefits "being received" by the employee. *See* 39-A M.R.S. § 221(3)(B), (C), (D).

[¶18] Further, we construe the language of the statute in light of its purpose. As we have previously held, the adjustment created by the predecessor to the portion of section 221 applicable here is designed to "ensure a minimum income during the period of an employee's incapacity and to

prevent a double recovery of both retirement and compensation benefits." *Jordan*, 651 A.2d at 361;[4] *see also Foley v. Verizon*, 2007 ME 128, ¶ 11, 931 A.2d 1058. Permitting Interstate to presently receive a credit based on incapacity benefit overpayments made during the past period when Urrutia also received old-age Social Security benefits comports with both of those objectives. Without the credit, Urrutia would retain the double recovery of benefits that section 221 is intended to prevent, while application of the credit formula prescribed in that statute results in Urrutia's receipt of the combined level of benefits intended by the Legislature.

[¶19] Supporting this purpose, section 221(3) states explicitly that "[b]enefit payments subject to this section *must be reduced* in accordance with the following provisions." (Emphasis added.) The statute thus not only creates an employer's entitlement to the credit but makes that credit mandatory. The constrictive reading of section 221(1) urged by Urrutia would deny the employer that stated entitlement and runs counter to the plain language of section 221(3), which creates a credit calculated on the basis of Social Security

---

4 The statute construed in *Jordan*, 39 M.R.S.A. § 62-B (1989), was the predecessor to the current section 221 "coordination of benefits" statute. *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 359-60 (Me. 1994). The pertinent aspects of those statutes contain similar language. *Compare* 39 M.R.S.A. § 62-B(3)(A)(1) (1985), *with* 39-A M.R.S. § 221(3)(A)(1) (2017), *and* P.L. 1991, ch. 885 §§ A-7, A-8 (effective Oct. 7, 1992) (repealed and replaced Title 39 M.R.S.A. § 62-B as amended). Section 221 has since been amended, most recently by P.L. 2013, ch. 152 § 1 (effective Oct. 9, 2013) (codified at 39-A M.R.S. § 221(3) (2017)).

12

retirement benefits that the employee has already "received." Section 221(3) therefore comports with the purpose of the statute by providing a mechanism by which to implement the credit and prevent a double recovery.

[¶20]  As Urrutia correctly points out, in several different circumstances we rejected an employer's attempt to recoup past overpayments of workers' compensation benefits.  For example, in *Pelotte v. Purolator Courier Corp.*, 464 A.2d 186 (Me. 1983), the employer voluntarily made payments that turned out to be in a greater amount than the employee was entitled to receive.  *Id.* at 187.  We affirmed the court's refusal to allow the employer recovery for the past overpayments, observing that such a remedy was neither created in the statute addressing voluntary incapacity payments, *see* 39 M.R.S.A. § 51-A (Supp. 1982-1983),[5] nor revealed in that statute's legislative history.  *Id.* at 188. In *LaRochelle v. Crest Shoe Co.*, 655 A.2d 1245 (Me. 1995), we concluded that the plain, express language of 39 M.R.S.A. § 104-A(1) (1989), which provided for an employer's recovery of overpayments that were "made pending appeal,"

---

[5]  The statute at issue in *Pelotte v. Purolator Courier Corp.*, 464 A.2d 186 (Me. 1983), was repealed when the Workers' Compensation Act was recodified in 1991 and not replaced in substance. *See* P.L. 1991 ch. 885.

We note that, for reasons that are not apparent, our decision in *Pelotte* did not address or even acknowledge the "compensation payments; penalty" provision, 39 M.R.S.A. § 104-A (1983), that was in effect at the time and contained similar language as the current provision found at 39-A M.R.S. § 324(1) (2017). *Compare* 39-A M.R.S. § 324(1), *with* 39 M.R.S.A. § 104-A.

did not allow the employer to recoup overpayments that were made before the appeal was filed. *Id.* at 1246-47; *see also Bureau v. Staffing Network, Inc.*, 678 A.2d 583, 590 (Me. 1996) (stating that, absent statutory entitlement, reimbursement is not available for past overpayments). Additionally, we have held that in order to promote timely filings and compliance with the administrative process, when an employer fails to file a timely response to the employee's notice of injury, the employee is entitled to retain benefits exceeding the amount to which the employee was otherwise entitled. *See Doucette v. Hallsmith/Sysco Food Servs., Inc.*, 2011 ME 68, ¶¶ 7, 24, 25-26, 21 A.3d 99.

[¶21] In contrast to those cases, both the plain language of section 221(1) and its underlying purpose—to prevent a double recovery by the employee—establish that the Legislature intended that an employer is entitled to a "credit" for past overpayments resulting from the employee's receipt of Social Security retirement benefits during the same period when the employer was required to make the incapacity benefit payments. Consequently, Interstate is entitled to a credit for incapacity benefit overpayments made to Urrutia during the same period when he received Social Security retirement

14

benefits, from December 2010 through November 2013, totaling $24,141.38. We therefore vacate the decision of the Appellate Division.

[¶22]   We also remand for further proceedings to allow the administrative law judge, *see infra* n.1, to determine, based on a hardship analysis, whether the financial effect of Interstate's benefit payment holiday on Urrutia may be considered and, if so, the extent and terms of the holiday.  We do so because, at oral argument, counsel for Interstate acknowledged the prospect that the ALJ is authorized, pursuant to 39-A M.R.S. § 324(1) (2017)[6] or other authority, to consider such an effect when determining the specific terms of the credit and resulting payment holiday, to which we have now established that Interstate is entitled.[7]  Because the issue is not before us, we do not address whether, in the circumstances presented here, an ALJ may tailor the implementation of a payment holiday to accommodate any hardship that the holiday creates.  Because, however, Interstate has indicated that such authority may exist, we remand to give the parties the opportunity to develop the issue further.

---

[6]  Section 324(1) provides in part that the "board" is authorized to determine "whether or not repayment should be made and the extent and schedule of repayment" in light of its effect on the employee's financial situation.  39-A M.R.S. § 324(1).

[7]  Although in the amended decree the hearing officer permitted Interstate to "cease" payment of incapacity benefits until the credit was exhausted, it is unclear from the record whether the officer actually considered whether the holiday would work a "hardship or injustice" on Urrutia. *Id.*

The entry is:

> The decision of the Appellate Division is vacated. Remanded to the Appellate Division with instructions to affirm the decision that Interstate Brands International is entitled to a credit of $24,141.38 and to then remand to the ALJ for further proceedings addressing the application and effect of section 324.

---

JABAR, J., with whom ALEXANDER, J., joins, dissenting.

[¶23]  We respectfully dissent because the Workers' Compensation Board Appellate Division was correct when it held that the Workers' Compensation Act (the Act) does not provide an employer a remedy for overpayments made to employees as a result of that employer's failure to coordinate workers' compensation benefits with Social Security benefits pursuant to 39-A M.R.S. § 221 (2017).

[¶24]  A decision of the Appellate Division is "entitled to great deference and will be upheld on appeal unless the statute plainly compels a different result." *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me. 1994) (quotation marks omitted).  Here, a proper reading of section 221 does not compel a result in Interstate's favor, and unlike the Court, we would defer to the Appellate Division's analysis and affirm its decision.

A.   The Plain Language

[¶25]   The Appellate Division unanimously concluded that "[t]he plain language of section 221(1) requires that the offset or credit be taken '*with respect to the same time period*' for which the employee is also receiving or has received payments."   *Urrutia v. Interstate Brands International*, Me. W.C.B. No. 16-35, ¶ 7 (App. Div. 2016).   The Appellate Division reasoned that to "permit an offset when weekly incapacity benefits are being made for a different period than that in which the employee received Social Security retirement benefits . . . is in contravention of the plain meaning of the language in section 221(1)." *Id.*

[¶26]   The Appellate Division was correct.   Workers' compensation benefits for total incapacity (39-A M.R.S. § 212 (2017)) or partial incapacity (39-A M.R.S. § 213 (2017)) are paid on a weekly basis.   Following an injury, an employer has 14 days to dispute the employee's claim of incapacity.   Me. W.C.B. Rule, ch. 1, § 1; *see* 39-A M.R.S. § 304(3) (2017).   An employee will then receive workers' compensation benefits under two scenarios.   *See* 39-A M.R.S. §§ 205(2), 305 (2017).   First, in the event that the employer does not dispute the claim, the employer must begin paying the employee benefits on a weekly basis, plus any accrued compensation.   *See* 39-A M.R.S. § 205(2).   Under this

scenario, even where the employer agrees to pay the employee, there may be an accrued amount due for the time period between the employee's notice of claim and the employer's decision to accept the claim.

[¶27]  The second scenario in which an employee receives compensation is when the employer disputes the claim.  39-A M.R.S. § 305.  Under this scenario, in order to receive benefits, the employee must file a petition for an award with the Workers' Compensation Board.  *Id.*  This leads to hearings before an administrative law judge (ALJ) and, unless the employer accepts responsibility during the course of the proceedings, the ALJ renders a decision either denying the claim or granting the claim and awarding the employee benefits for his incapacity.  39-A M.R.S. § 318 (2017).  If the employee is still incapacitated, the award will indicate that the employer has a continuing obligation to make ongoing payments and, depending on the decision, the employer may be held responsible for payments retroactive to when the employee's period of incapacity began.  The employee's compensation for that past period of time will then be paid in a lump sum by the employer.[8]

[¶28]  Section 221 provides for adjustments to an employee's workers' compensation benefits covering these two scenarios.  If the employee is to

---

[8]  This lump sum payment for accrued benefits is not to be confused with a lump sum settlement made pursuant to 39-A M.R.S. § 352 (2017), where the entire case is settled.

begin receiving weekly workers' compensation benefits and the employee is also receiving Social Security benefits, then the employer is entitled to an adjustment against the ongoing workers' compensation benefits that it is required to pay. 39-A M.R.S. § 221(1). On the other hand, if the employee is set to receive a lump sum workers' compensation payment—retroactive to the employee's period of incapacity—then the employer is entitled to an adjustment against that lump sum payment reflecting a credit for the amount of Social Security benefits the employee received during the "same time period" that he or she was entitled to receive workers' compensation benefits. *Id.*

[¶29]    Accordingly, the plain language of section 221 cannot be interpreted to allow a lump sum credit in the form of a payment "holiday"— covering a *past* period of time—to be applied to *ongoing* weekly benefits. Rather, the coordination set out in section 221 must be applied to the same time period for which the employee *is receiving* Social Security benefits, or to the same time period for which the employee *has received* Social Security benefits.

[¶30] Here, the Court does not recognize the distinction between present and past payments in section 221. The Court concluded that the phrase "credit or reduction" in 39-A M.R.S. § 221(3)(B) (2017) signifies a recovery mechanism because a credit "can only be based on past overpayments." Court's Opinion

¶ 16.  However, in so reasoning, the Court failed to consider that a "credit" is applied when an employee is entitled to—but has not yet received—a lump sum payment for workers' compensation benefits retroactive to the employee's period of incapacity.  Similarly, the Court wrongfully concluded that "credit" as used in section 221 can only be given meaning by applying it to a future payment "holiday," even though the credit applies to a lump sum payment covering a past period of time.  According to the Court, "[t]he reference to past receipt of retirement benefits demonstrates that the Legislature intended that the amount of incapacity benefits is to be coordinated with other qualifying benefits—including Social Security retirement benefits—even when the benefits were received in the past, before the adjustment is implemented."  Court's Opinion ¶ 15.

[¶31]  We do not agree, as this analysis fails to take into consideration the lump sum provision in section 221.  The language "credit or reduction" in section 221(3)(B) is in the disjunctive, and therefore the adjustments to an employee's workers' compensation benefits are intended to address the two methods by which an employee will receive those benefits.  It is when the employee receives workers' compensation benefits in a lump sum for a past period of time—as is usual in contested cases—that the adjustment because of

Social Security payments received during that period is coordinated with the workers' compensation liability for that same period of time. Stated simply, the statute does not permit an employer to receive a credit for a past period of time, that was never applied, to then be applied to offset ongoing weekly benefits.

B.     Policy Consideration

[¶32]  In addition to correctly concluding that the plain language of the statute denies Interstate the remedy of collecting an overpayment by crediting ongoing weekly benefits, the Appellate Division also properly identified the policy considerations underlying section 221. *Urrutia v. Interstate Brands International*, Me. W.C.B. No. 16-35, ¶ 8 (App. Div. 2016).  It acknowledged that the dual purpose of the statute is to (1) "ensure a minimum income during the period of incapacity," and (2) "prevent a double recovery of both retirement and compensation benefits." *Id.* (quoting *Jordan*, 651 A.2d at 361).  The Appellate Division reasoned that "[a]llowing an offset that is concurrent with receipt of more than one type of benefit effectuates both of the articulated purposes, whereas allowing an employer to take a payment holiday from paying benefits to compensate for an offset not taken previously does not." *Id.* Here, the Court discusses section 221's policy against double recovery.  Court's Opinion ¶ 18.  However, in attempting to address the policy of ensuring a

minimum income during the period of incapacity, the Court has erred by improperly engrafting a "hardship analysis" onto the plain language of section 221. *See* Court's Opinion ¶ 22.

[¶33] On numerous occasions, we have held that the Act does not contain any remedy to protect against a double recovery by an employee. The Court's decision prioritizes the policy against double recovery over the policy to ensure a minimum income, and this is contrary to our numerous decisions holding that the Act does not provide an employer a remedy to collect overpayments. In *American Mutual Insurance Companies v. Murray*, we held:

> "To . . . engraft[] upon the statutory scheme judicially created doctrines of restitution would involve us in the establishment of broad social policy in a field of law created by the legislature in response to legislative dissatisfaction with judicial solutions to the problems of compensation for workers injured in industrial accidents. . . . In the absence of an express legislative command or a clear indication of legislative intention, we leave the parties where the legislature left them."[9]

420 A.2d 251, 252 (Me. 1980); *see also Pelotte v. Purolator Courier Corp.*, 464 A.2d 186, 188 (Me. 1983) ("Although the absence of a right to set off

---

[9] The Court posits that its construction of section 221 fulfills the statutory purpose of "prevent[ing] a double recovery of both retirement and compensation benefits." *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 361 (Me. 1994). However, the equitable remedy of restitution exists in the common law, outside the Workers' Compensation Act, and thus, there is nothing to prevent Interstate from attempting to collect any overpayment in an action for equitable restitution. *See* Horton & McGehee, *Maine Civil Remedies* § 7-5 at 178-83 (4th ed. 2004).

voluntary pre-decree overpayments against subsequent periodic compensation may discourage employers from making maximum pre-decree payments, it is for the Legislature, rather than this Court, to address that issue."); *LaRochelle v. Crest Shoe Co.*, 655 A.2d 1245, 1247 (Me. 1995) ("If the Legislature intended to enable employers to recoup overpayments made during the pendency of a motion for findings of fact, it could have easily drafted the statute to say so."); *Doucette v. Hallsmith/Sysco Food Servs.*, 2010 ME 138, ¶ 5, 10 A.3d 692 (reaffirming the principle that "we are limited to the statutory remedies for repayment of benefits ultimately determined not to be properly paid").

[¶34]  The Appellate Division properly concluded that the workers' compensation statute—which is uniquely statutory—does not, with the exception of 39-A M.R.S. § 324(1) (2017), provide a remedy to an employer to recoup an overpayment.  *Urrutia v. Interstate Brands International*, Me. W.C.B. No. 16-35, ¶ 9 n.2 (App. Div. 2016).  We have consistently held that this Court has no authority to supplement the statutory language of the Act.  *See Wentzell v. Timberlands, Inc.*, 412 A.2d 1213, 1215 (Me. 1980) ("Since the Workers' Compensation Act is a creation of the legislature, the legislature bears the primary responsibility for enunciating with clarity the purposes it intends to

achieve through that statute."); *Ryerson v. Pratt & Whitney Aircraft*, 495 A.2d

808, 812 (Me. 1985) ("If a policy different from that laid down by th[e] clear

language is to be adopted, it is the legislature that should do it . . . ."). As such,

the Court's remand to the ALJ to consider the issue of a "hardship analysis"

demonstrates the problem with providing a remedy under section 221 that

does not exist. A hardship analysis pursuant to section 324(1) only applies

when, following an employer's successful appeal or motion for findings of fact

or conclusions of law, it is determined that an overpayment to an employee has

been made during the pendency of that appeal or motion.[10] Because we are not

dealing with this type of overpayment, the hardship analysis provided in

section 324(1) does not apply. However compassionate the Court's approach

---

[10] 39-A M.R.S. § 324(1) (2017) provides, in pertinent part:

> If the board enters a decision awarding compensation, and a motion for findings of fact and conclusions of law is filed with the administrative law judge or an appeal is filed with the division pursuant to section 321-B or the Law Court pursuant to section 322, payments may not be suspended while the motion for findings of fact and conclusions of law or appeal is pending. *The employer or insurer may recover from an employee payments made pending a motion for findings of fact and conclusions of law or appeal to the division or the Law Court if and to the extent that the administrative law judge, division or the Law Court has decided that the employee was not entitled to the compensation paid.* The board has full jurisdiction to determine the amount of overpayment, if any, and the amount and schedule of repayment, if any. The board, in determining whether or not repayment should be made and the extent and schedule of repayment, shall consider the financial situation of the employee and the employee's family and may not order repayment that would work hardship or injustice.

(Emphasis added.)

may be, and however consistent it may be with the policy of "ensuring a minimum income during a period of incapacity," there is no provision in the Act that provides such relief. The Court characterizes this remedy as an "entitlement" for the employer. Court's Opinion ¶ 19. If it is an entitlement for the employer, the Legislature would have identified it as an entitlement—it didn't. By judicially engrafting this "hardship analysis" onto section 221, the Court is legislating.

[¶35] Had the Legislature intended to permit the recovery of overpayments caused by a failure to coordinate benefits pursuant to section 221—or, for that matter, any overpayment other than the type specified in section 324(1)—it could have done so. The Legislature did not provide any remedy in the Act to an employer who overpays as a result of failing to coordinate benefits under section 221, and the *only* mechanism that grants an employer any such remedy is limited to the specific scenario contained in section 324(1). Because section 324(1) is not applicable here, it is in error to remand to the ALJ for a "hardship analysis."

C.    Conclusion

[¶36] It is up to the Legislature and not this Court to provide employers a remedy within the Act to "recoup" overpayments that an employer made to

an employee because the employer failed to coordinate workers' compensation benefits with Social Security benefits pursuant to section 211.  Because section 211 contains no such remedy, we should affirm the decision of the Appellate Division.

---

Stephen W. Moriarty, Esq. (orally), Norman, Hanson & DeTroy, Portland, for appellants Interstate Brands International and Ace American Insurance Company

James J. MacAdam, Esq., Nathan A. Jury, Esq. (orally), and Donald M. Murphy, Esq., MacAdam Jury, P.A., Freeport, for appellee Victor S. Urrutia

Benjamin K. Grant, Esq., McTeague Higbee, Topsham, for amicus curiae Maine AFL-CIO

Richard D. Tucker, Esq., Tucker Law Group, Bangor, for amicus curiae Catalyst Paper Corporation

Thomas E. Getchell, Esq., and Daniel F. Gilligan, Esq., Troubh Heisler, Portland, for amicus curiae S.D. Warren Company

Workers' Compensation Board Appellate Division docket number 15-0028
FOR CLERK REFERENCE ONLY