MAINE SUPREME JUDICIAL COURT                      Reporter of Decisions
Decision:    2021 ME 17
Docket:      WCB-20-178
Argued:     March 10, 2021
Decided:    March 30, 2021

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

ROBERT CHAREST

v.

HYDRAULIC HOSE & ASSEMBLIES, LLC, et al.

HUMPHREY, J.

[¶1]  In this appeal, we construe the Workers' Compensation Act to determine whether the Act's statute of limitations expired before Robert Charest petitioned for review of incapacity in 2017.

[¶2]  Charest appeals from a decision of the Appellate Division of the Workers' Compensation Board affirming the decision of the WCB Administrative Law Judge (*Collier, ALJ*) denying Charest's petition for review of incapacity benefits paid by Hydraulic Hose & Assemblies, LLC, through its insurer, The Hanover Insurance Group, because the statute of limitations had expired.  We conclude that the Appellate Division erred in determining that the statute of limitations had expired, and we vacate its decision and remand with

2

instructions to vacate the ALJ's decision and remand the matter to the ALJ for further proceedings.

## I.  BACKGROUND

[¶3]  On April 27, 2001, Charest sustained a gradual low-back work injury while employed by Hydraulic Hose & Assemblies, LLC.  He sustained a hernia injury soon thereafter, on May 17, 2001, and received some workers' compensation incapacity benefits while recovering from surgery.  Charest began receiving Social Security old-age insurance benefits in 2003.  In August 2004, he petitioned for an award of compensation based on the two 2001 injuries and an injury that he alleged he sustained on June 25, 2004.

[¶4]   On March 27, 2006, a hearing officer[1] (*Collier, HO*) found that Charest had suffered a compensable, gradual low-back injury on April 27, 2001, and a work-related hernia on May 17, 2001, but found that no new injury had occurred on June 25, 2004.  The hearing officer awarded Charest ongoing partial incapacity benefits at the level of thirty-five percent.

---

[1]  The decision was issued on March 27, 2006, before hearing officers were redesignated as administrative law judges.  *See* P.L. 2015, ch. 297 (effective Oct. 15, 2015).

[¶5] On April 4, 2006, Hydraulic, through its insurer, The Hanover Insurance Group, paid the accrued partial incapacity benefits.[2] One week later, on April 11, 2006, Hanover made a weekly partial incapacity benefit payment. Six days after that, Hanover informed Charest that it would offset the incapacity benefit with the Social Security old-age insurance benefits that Charest had been receiving since 2003 and that the entire amount Charest had received to date was an overpayment. *See* 39-A M.R.S. § 221(3)(A)(1) (2020) (requiring the reduction of weekly benefit payments by "[f]ifty percent of the amount of the old-age insurance benefits received or being received under the United States Social Security Act").

[¶6] Charest received no additional payments through Hanover because the entire amount of the ongoing payments was offset by his Social Security benefits. From 2006 through 2010, Hanover filed with the Board annual statements of compensation paid, in each statement checking the box to indicate that its report as to Charest was an "interim report (ongoing payments)" rather than a "final report." No discontinuation of compensation

---

[2] This payment was calculated to include an offset for unemployment benefits that Charest had received.

4

form has been filed.[3]  *See* 39-A M.R.S. § 205(9)(B)(2) (2020);[4] 90-351 C.M.R. ch. 8, § 15(3), ch. 9, § 1 (effective Sept. 1, 2018).

[¶7]  On May 1, 2017, Charest filed a petition for review of incapacity, arguing that he was entitled to total incapacity benefits.  After a hearing, the ALJ denied the petition, finding that Charest's most recent benefit payment was made on April 11, 2006, and, as calculated from that date, the six-year statutory limitation period had expired.  *See* 39-A M.R.S. § 306(2) (2020) (providing that, if an employer or insurer pays benefits within two years after the date of injury or the employer's required first report of injury, a party has "6 years from the date of the most recent payment" to file a petition).  The ALJ concluded that Charest's receipt of Social Security benefits did not toll the running of the six-year statute of limitations.  On November 19, 2019, the ALJ denied Charest's motion for findings of fact and conclusions of law.  *See* 39-A M.R.S. § 318 (2020).

---

[3]  There is evidence in the record that Hanover filed a notice of controversy in 2007 to "[d]eny request to pro-rate offset for Old Age Social Security Benefits and increase partial compensation."  No discontinuance followed.

[4]  This portion of the statute has been amended since the date when compensation began but not in any way that affects this appeal.  *See* P.L. 2015, ch. 297, § 5 (effective Oct. 15, 2015) (changing "hearing officer" to "administrative law judge"); P.L. 2011, ch. 647, § 2 (effective Aug. 30, 2012) (authorizing the employer or insurer to discontinue payments as ordered in a decision while a motion for findings of fact and conclusions of law, or an appeal, is pending); P.L. 2009, ch. 280, § 1 (effective Sept. 12, 2009, and retroactive "to all injuries including pending cases and cases on appeal") (adding the final two sentences of the subparagraph, which are not at issue here).

[¶8] Charest appealed the denial of his petition to the Appellate Division, arguing that the statute of limitations had not expired because workers' compensation payments were ongoing even if they were fully offset, and the receipt of his Social Security benefits in these circumstances served to toll the statute of limitations. The Appellate Division affirmed the determination that the limitations period had not been tolled and had expired. Charest petitioned for appellate review of the Appellate Division's decision, and we granted his petition. *See* 39-A M.R.S. § 322 (2020); M.R. App. P. 23(c).

## II. DISCUSSION

[¶9] Charest contends that Hydraulic's payments were ongoing but completely offset by his Social Security old-age insurance benefits and that the statute of limitations cannot have expired even if, due to the Social Security offset, Hydraulic had not itself paid benefits through Hanover since 2006. Hydraulic and Hanover argue that the statute of limitations must be construed strictly, based on its plain language, to run from the date of the last actual workers' compensation payment made to an employee. To decide the issue raised on appeal, we (A) summarize the standard of review and applicable rules of statutory construction and (B) interpret the Act in accordance with those standards.

6

A.      Standard of Review and Rules of Construction

[¶10]   We review the Appellate Division's statutory interpretation de novo. *Urrutia v. Interstate Brands Int'l*, 2018 ME 24, ¶ 12, 179 A.3d 312. "Our main objective in statutory interpretation is to give effect to the Legislature's intent."[5]  *Id.* (quotation marks omitted).  "[W]e look first to the plain meaning of the statutory language in order to determine that intent."  *Id.* (quotation marks omitted).  In reviewing the plain language of a statute, we "consider the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved."[6]  *Id.* (quotation marks omitted).  "[A] statute of limitations should be construed strictly in favor of the bar which it was intended to create."  *Packgen, Inc. v. Bernstein, Shur, Sawyer & Nelson, P.A.*, 2019 ME 90, ¶ 20, 209 A.3d 116 (quotation marks omitted).

---

[5]  By statute, the Workers' Compensation Act must be construed "so as to ensure the efficient delivery of compensation to injured employees at a reasonable cost to employers.  All workers' compensation cases must be decided on their merits and the rule of liberal construction does not apply.  Accordingly, this Act is not to be given a construction in favor of the employee, nor are the rights and interests of the employer to be favored over those of the employee."  39-A M.R.S. § 153(3) (2020).

[6]  We will defer to "the Appellate Division's reasonable interpretation of the workers' compensation statute," *Bailey v. City of Lewiston*, 2017 ME 160, ¶ 9, 168 A.3d 762, only if the statutory language is ambiguous.  *See Urrutia v. Interstate Brands Int'l*, 2018 ME 24, ¶ 12, 179 A.3d 312.

[¶11] When an employer asserts that the statute of limitations has run on an employee's petition, it bears the initial burden of proving that the claim falls outside the limitation period. *Leighton v. S.D. Warren Co.*, 2005 ME 111, ¶ 14, 883 A.2d 906. If the employee contends that the statute of limitations has been tolled, he bears the burden of proving the facts that demonstrate the tolling. *Id.* ¶ 16. Because only legal issues are raised in this appeal, however, and the facts are not in dispute, the shifting burden of proof does not bear on our analysis; the facts are as found by the ALJ, and the question is one of statutory interpretation.

B.      Interpretation of the Workers' Compensation Act

[¶12] Two provisions are at issue in connection with this appeal—the statute of limitations and the statute requiring the coordination of workers' compensation benefits with other benefits, including Social Security old-age insurance benefits. The statute of limitations provides,

### § 306. Time for filing petitions

**1. Statute of limitations.** Except as provided in this section, a petition brought under this Act is barred unless filed within 2 years after the date of injury or the date the employee's employer files a required first report of injury if required in section 303, whichever is later.

**2. Payment of benefits.** If an employer or insurer pays benefits under this Act, with or without prejudice, within the

period provided in subsection 1, the period during which an employee or other interested party must file a petition is 6 years from the date of the most recent payment.

39-A M.R.S. § 306 (2020).[7] Because Charest received some workers' compensation payments in 2001, he is subject to the statute of limitations set forth in section 306(2). The question, therefore, turns on what is meant by "the most recent payment." *Id.* § 306(2).

[¶13] The statute requiring that the employee's receipt of Social Security old-age insurance benefits offset the employer's workers' compensation payments provides, in relevant part, as follows:

### § 221. Coordination of benefits

**1. Application.** This section applies when either weekly or lump sum payments are made to an employee as a result of liability pursuant to section 212 or 213 [total or partial incapacity] with respect to the same time period for which the employee is also receiving or has received payments for:

**A.** Old-age insurance benefit payments under the United States Social Security Act, 42 United States Code, Sections 301 to 1397f . . .

. . . .

---

[7] Subdivision 1 of this statute was amended effective in 2012, but not in any way that affects this appeal. P.L. 2011, ch. 647, § 18 (effective Aug. 30, 2012) (clarifying that the two-year period may run from the date of an employer or insurer's *required* first report).

**3. Coordination of benefits.** Benefit payments subject to this section must be reduced in accordance with the following provisions.

> **A.** The employer's obligation to pay or cause to be paid weekly benefits other than benefits under section 212, subsection 2 or 3 [for presumed total incapacity and specific losses] is reduced by the following amounts:
>
>> (1) Fifty percent[8] of the amount of the old-age insurance benefits received or being received under the United States Social Security Act. For injuries occurring on or after October 1, 1995, such a reduction may not be made if the old-age insurance benefits had started prior to the date of injury or if the benefits are spouse's benefits . . . .

39-A M.R.S. § 221 (2020).[9] In a provision governing the effect of Social Security *disability* insurance benefit payments on workers' compensation benefit payments, the Legislature provided additional language regarding the treatment of Social Security *old-age* insurance benefits as primary payments:

> Disability insurance benefit payments under the Social Security Act are considered payments from funds provided by the employer and *are considered primary payments on the employer's obligation under section 212 or 213 as old-age benefit payments under the Social Security Act are considered pursuant to this section.* However, social security disability insurance benefits may only be so considered if section 224 of the Social Security Act, 42 United States Code,

---

[8] This percentage reflects "the employer's share of social security taxes paid." L.D. 1634, Statement of Fact (112th Legis. 1985).

[9] Although section 221 has been amended since the award of benefits to Charest, the pertinent provisions are unchanged. *See, e.g.*, P.L. 2019, ch. 344, § 11 (effective Sept. 19, 2019) (codified at 39-A M.R.S. § 221(3)(A)(2) (2020)).

Section 424a, is revised so that a reduction of social security disability insurance benefits is not made because of the receipt of workers' compensation benefits by the employee. The coordination of social security disability benefits commences on the date of the award certificate of the social security disability benefits. Any accrued social security disability benefits may not be coordinated.

39-A M.R.S. § 221(3)(E) (emphasis added).

[¶14] The coordination statute was adopted "[i]n order to keep injured employees from receiving more income from a combination of Social Security or retirement benefits plus workers' compensation benefits than they would receive if they continued to work." *Foley v. Verizon*, 2007 ME 128, ¶ 7, 931 A.2d 1058; *see also Ricci v. Mercy Hosp.*, 2002 ME 173, ¶ 10, 812 A.2d 250 (recognizing five purposes for the coordination of benefits: "(1) to reduce insurance premiums and prevent carriers from withdrawing business from the state; (2) to ensure a minimum income during the period of an employee's incapacity; (3) to prevent a double recovery of both retirement and compensation benefits; (4) to prevent the stacking of benefits; and (5) to alleviate the burden on employers who are required to pay into the workers' compensation and social security systems" (citations omitted) (quotation marks omitted)).

[¶15]  This statute applies when partial or total incapacity "payments are made," 39-A M.R.S. § 221(1), and it provides for the reduction of "[b]enefit payments" in defined circumstances, *id.* § 221(3).  As to the Social Security benefits at issue here, the statute reduces the "obligation to pay" workers' compensation benefits by fifty percent of the Social Security benefits received. *Id.* § 221(3)(A).  The issue here is that the statute of limitations speaks of the date of the most recent "payment"—not the date on which the employer was most recently *obligated* to pay.  *Id.* § 306(2).

[¶16]  The legislative intent conveyed in section 221 itself, however, makes plain that offsetting payments of Social Security old-age insurance benefits received by the employee are considered to be primary workers' compensation payments by the employer.  The statute provides that the Social Security disability insurance payments (which are not at issue here) "are considered payments from funds provided by the employer and are considered primary payments on the employer's obligation under section 212 or 213 *as old-age benefit payments under the Social Security Act are considered pursuant to this section*."  *Id.* § 221(3)(E) (emphasis added).  Hydraulic contends that

paragraph E would apply only to Social Security disability payments,[10] but by its plain language, the paragraph's described treatment of any such disability payments as primary payments on the employer's obligation is designed to be the same as its treatment of "old-age benefit payments under the Social Security Act." *Id.* § 221(3)(E).

[¶17]  Construing the statute as a whole and based on its plain language, *see Urrutia*, 2018 ME 24, ¶ 12, 179 A.3d 312, paragraph E conveys the legislative intent that the offsetting old-age Social Security benefit payments constitute primary payments of workers' compensation under the Act.  Thus, when we construe the statute of limitations strictly, in conjunction with the entire statutory scheme, *see Urrutia*, 2018 ME 24, ¶ 12, 179 A.3d 312; *Packgen, Inc.*, 2019 ME 90, ¶ 20, 209 A.3d 116, "the date of the most recent payment" is the date of the most recent offsetting old-age Social Security benefit payment. 39-A M.R.S. § 306(2).

[¶18] Because of the possibility that old-age Social Security benefits may be payable for life, an employer could be deemed to be paying workers' compensation benefits pursuant to section 221(3)(E) well beyond the point at

---

10  By its terms, 39-A M.R.S. § 221(3)(E) (2020) would apply as to disability benefits only if the Social Security Act were amended to preclude a reduction in disability benefits based on the employee's receipt of workers' compensation.

which benefits would otherwise be subject to discontinuance. In such a circumstance, an end date for compensation payments can be established through the Act's process of discontinuance. *See* 39-A M.R.S. § 205(9) (providing that an employer "may discontinue or reduce benefits" in accordance with specified procedures). If an award of compensation has been entered, discontinuance requires the employer or its insurer to "petition the board for an order to reduce or discontinue benefits," and the employer or insurer "may not reduce or discontinue benefits until the matter has been resolved by a decree issued by an administrative law judge."[11] *Id.* § 205(9)(B)(2). In addition to the petition to discontinue benefits, the employer or insurer must file a form that provides a blank space to indicate the date of the final payment. *See* 90-351 C.M.R. ch. 8, § 15(3)(C) (effective Sept. 1, 2018); Me. WCB Form WCB-4D (effective Sept. 1, 2020). No such discontinuance was effectuated in this matter, and therefore the payments, though entirely offset, were ongoing.

[¶19] The plain-language interpretation outlined here supports the purpose of the workers' compensation statute of limitations "to reconcile an

---

[11] The expiration of a statutory durational limit for payments, *see, e.g.*, 39-A M.R.S § 213(1), (4) (2020), does not automatically discontinue benefits except in limited circumstances. *See Russell v. Russell's Appliance Serv.*, 2001 ME 32, ¶¶ 5-7, 766 A.2d 67.

injured party's interest in compensation with the employer's interest in a terminal date to litigation." *Hird v. Bath Iron Works Corp.*, 512 A.2d 1035, 1036-37 (Me. 1986). Although "[t]he goal is to protect the employer against claims too old to be successfully investigated and defended," *id.* (quotation marks omitted), section 221(3)(E) places employers on notice that the payment of offsetting Social Security old-age insurance benefits constitutes primary payment under the Act, and section 306(2) informs them that if that subsection applies, the limitations period will run from the date of the most recent payment.

[¶20] Our case law is also consistent with the plain meaning of the Workers' Compensation Act as described above. We have held that payments made pursuant to the federal Longshoreman's Act—a federal workers' compensation statute—must be considered as benefits required under the Maine Workers' Compensation Act for purposes of determining the date of last payment. *Stockford v. Bath Iron Works Corp.*, 482 A.2d 843, 845 (Me. 1984). We reached that holding because "[p]ayments under the Longshoreman's Act serve the same purpose as those under the WCA and satisfy the compensation obligation of the WCA," with the benefits constituting concurrent remedies. *Id.*

[¶21]  Hydraulic and Hanover argue that there is a meaningful distinction between the purposes for Social Security old-age insurance benefits and benefits under the Workers' Compensation Act or Longshoreman's Act.  It is true that Social Security old-age insurance benefits are not, like Longshoreman's Act benefits, based on work injuries and instead benefit qualifying individuals who have contributed to Social Security and reached the minimum statutory age.  *See* 42 U.S.C.S. § 402 (LEXIS through Pub. L. No. 116-313).  This distinction makes no meaningful difference, however, given the Legislature's explicit pronouncement that Social Security old-age insurance benefits "are considered payments from funds provided by the employer and are considered primary payments on the employer's obligation under section 212 or 213."  39-A M.R.S. § 221(3)(E).[12]

[¶22]  Our recent decision in *Urrutia v. Interstate Brands International*, 2018 ME 24, 179 A.3d 312, also does not control the issue that we decide today.

---

[12]  In interpreting the predecessor to the current Workers' Compensation Act, which provided, "No petition of any kind may be filed more than 10 years following the date of the latest payment made under this Act," 39 M.R.S.A. § 95 (Pamph. 1988), we held, "[S]ection 95 does not put any . . . restriction on the kind of payments that can toll the statute of limitations, so long as the payment is 'made under this Act.'" *Johnson v. Bath Iron Works Corp.*, 551 A.2d 838, 839-40 (Me. 1988).  We held that the time of last payment could be the time of payment of attorney and witness fees assessed by the Commission.  *See id.*

There, we held that an employer is entitled to a credit for workers' compensation benefits paid for a liability period during which the employee was receiving Social Security old-age insurance benefit payments. *Id.* ¶ 2. The availability of a credit to an employer for an offset for a previous period does not, however, bear on whether the offsetting Social Security old-age insurance benefits constitute primary payments on the workers' compensation obligation. That case did not involve a complete offset of workers' compensation benefits and demonstrates only that the offsetting payments pertain to the period of compensation for incapacity. *See id.*

[¶23] The legislative history further supports our analysis. *See Bailey*, 2017 ME 160, ¶ 9, 168 A.3d 762. Maine's statute governing the coordination of benefits is based on Michigan law. *See* L.D. 2464, Statement of Fact, pt. A(7) (115th Legis. 1992). Michigan's statute regarding the treatment of Social Security disability and old-age insurance benefits is nearly identical to Maine's section 221(3)(E). *See* Mich. Comp. Laws Serv. § 418.354(11) (LEXIS through Public Act 1-402 and E.R.O. 2020-3 from the 2020 Legislative Session) ("Disability insurance benefit payments under the social security act shall be considered to be payments from funds provided by the employer and to be primary payments on the employer's obligation . . . *as old-age benefit payments*

*under the social security act are considered pursuant to this section*." (emphasis added)).[13]

[¶24]  The Michigan provision has not been interpreted for purposes of determining the date of most recent payment, likely because Michigan's statute of limitations does not require that determination.  Michigan provides for an extended limitations period for workers' compensation claims in certain circumstances: "If an employee claims benefits for a work injury and is thereafter compensated for the disability by worker's compensation *or benefits other than worker's compensation*, . . . the period of time within which a claim shall be made for benefits under this act shall be extended by the time during which the benefits are paid . . . ."  Mich. Comp. Laws Serv. § 418.381(1) (LEXIS through Public Act 1-402 and E.R.O. 2020-3 from the 2020 Legislative Session) (emphasis added).

[¶25]  Because Michigan law provides that any alternate benefits compensating for the disability extend the statute of limitations, the issue we address here does not exist in Michigan.  If Maine's statute is to be interpreted consistently with Michigan's, however, the offsetting Social Security old-age

---

[13]  The pertinent language in the Michigan statute was the same in 1992, when Maine adopted the language.  *See* Mich. Comp. Laws § 418.354(11) (LEXIS Mich. Code Archive 1992).

18

insurance benefits must be treated as primary payments of compensation. The legislative history of the statute, therefore, also supports the plain-language analysis described above. *See Bailey*, 2017 ME 160, ¶ 9, 168 A.3d 762.

### III. CONCLUSION

[¶26] Given the plain language of the applicable statutes in the context of a scheme that provides for ongoing payments until discontinuance, we conclude that offsetting Social Security old-age insurance benefits must be treated as primary payments of workers' compensation. *See* 39-A M.R.S. § 221(3)(A)(1), (E). The "date of the most recent payment" is therefore the date of most recent payment of offsetting Social Security old-age insurance benefits. *Id.* § 306(2). We therefore vacate the Appellate Division's decision and remand the matter for remand to the ALJ for further proceedings on the petition for review of incapacity.

The entry is:

> Decision of the Workers' Compensation Appellate Division vacated. Remanded to the Appellate Division with instructions to vacate the decision of the administrative law judge and remand for further proceedings on the petition for review of incapacity.

James J. MacAdam, Esq. (orally), Nathan A. Jury, Esq., and Donald M. Murphy, Esq., MacAdam Jury, P.A., Freeport, for appellant Robert Charest

Gregory R. Smith, Esq. (orally), Law Offices of Gregory R. Smith, Portland, for appellee Hydraulic Hose & Assemblies, LLC, and The Hanover Insurance Group

Workers' Compensation Board Appellate Division case number 19-0036
FOR CLERK REFERENCE ONLY